(No. 106068.—

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RICARDO SIGUENZA-BRITO, Appellee.

*Opinion filed November 19, 2009.*

Lisa Madigan, Attorney General, of Springfield, and Richard A. Devine and Anita Alvarez, State's Attorneys, of Chicago (James E. Fitzgerald, Alan J. Spellberg, Anastasia Nowacki Harper and Matthew Connors, Assistant State's Attorneys, of counsel), for the People.

Michael J. Pelletier, State Appellate Defender, Patricia Unsinn, Deputy Defender, and Manuel S. Serritos, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee.

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Thomas, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Following a bench trial in the circuit court of Cook County, defendant, Ricardo Siguenza-Brito, was found guilty of multiple offenses relating to kidnapping and criminal sexual assault. The court entered judgment on one count of aggravated kidnapping (720 ILCS 5/10—2(a)(3) (West 2004)) and one count of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(4) (West 2004)), and sentenced defendant to two consecutive six-year prison terms. The appellate court affirmed the aggravated criminal sexual assault conviction, reduced the aggravated kidnapping conviction to kidnapping, and remanded the cause to the circuit court for resentencing. No. 1—06—0632 (unpublished order under Supreme

Court Rule 23). We allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315(a). We now affirm the judgment of the appellate court in part and reverse in part, and affirm the judgment of the circuit court, as modified.

## I. BACKGROUND

Because defendant challenges the sufficiency of the evidence against him, a complete recitation of the facts adduced at trial is necessary. At approximately 9:30 a.m. on June 14, 2004, the victim, T.C., then 21 years old, was walking to work at a telemarketing business that was located at 3209 West 62nd Place. She was proceeding west on 62nd Street toward Kedzie Avenue. A dark blue or black four-door sport-utility vehicle (SUV) stopped beside her on its passenger side. The driver called out to her, and T.C. initially mistook him for a friend. T.C. walked around the rear of the vehicle and approached the driver's window. She recognized neither the driver nor the front seat passenger, and told the driver that she thought he was someone else. T.C. subsequently identified the front seat passenger as defendant. As T.C. walked around the back of the vehicle to return to the sidewalk, defendant exited the vehicle with a third man from the driver's side rear seat. Defendant and the third man grabbed T.C. and pushed her into the vehicle through the rear passenger side door. Although T.C. did not scream, she did not willingly enter the SUV and made it "difficult" for them to put her in the vehicle.

T.C. was forced to lie on her side in the backseat between defendant and the third man. She twice attempted to look up, but each time defendant hit her on the neck to keep her head down. Fearing that she would be struck again, T.C. stopped attempting to sit up, and remained in the prone position as she was transported in the SUV. She was driven for four to five minutes. The three men were Hispanic and spoke to each other in Spanish.

The SUV stopped in an alley in front of a two-car garage. Defendant exited the vehicle, entered the garage through a side door, and raised the overhead door. The SUV backed halfway into the garage. Defendant opened the rear driver's side door. Pushing T.C., the third man followed her out of the vehicle. Defendant took T.C. to a Geo Tracker that was inside the garage. The SUV drove out of the garage and the overhead door closed. A garage light was on. At this time, T.C. was in the garage with defendant and the third man from the SUV. The men opened the driver's door of the Geo and positioned T.C. in front of the opening. Defendant stood in front of T.C., who was flanked by the car door and the third man. Defendant attempted to push her head down toward his penis to force her to perform oral sex, but she resisted.

By this time, the driver of the SUV had returned. Defendant then grabbed T.C., turned her around to face the Geo, and pulled her pants down to her knees. Defendant then forced T.C. to bend over into the Geo, with her upper torso over the driver's seat. Defendant then touched her vagina with his hand, and inserted his penis into her vagina without her consent. The car door was on T.C.'s left side, defendant was directly behind her, the driver was leaning over the car door, and the third man stood on her right side.

The distance from the Geo to the garage floor was no more than two feet. T.C. was able to reach down and pick up a metal tool that was lying on the garage floor. Holding the tool in her left hand, she swung her arm backwards and hit the driver in the head with the tool. Defendant removed his penis from T.C.'s vagina to ascertain the driver's condition. As defendant and the third man tended to the driver, T.C. ran out of the garage side door, which was ajar. Once out of the garage, T.C. pulled up her pants and ran down the alley without looking back.

T.C. ran to Kedzie Avenue and from there to her place of employment. The garage was only one block from T.C.'s workplace, and T.C. ran there in approximately two minutes. She reported what had happened to a coworker and then to her supervisor. They telephoned the police.

When the police arrived, T.C. led them back to the garage. A woman came out of the house in front of the garage and spoke with police. She opened the overhead door and the Geo was still there. T.C. and the police drove to the front of the house to ascertain its address. While she was sitting in the squad car, T.C. saw defendant walking across the street. T.C. alerted police that defendant was one of the men who attacked her. After speaking with defendant, the police arrested him.

Defendant was tried on four counts of aggravated kidnapping (720 ILCS 5/10—2(a)(3) (West 2004)), which alleged kidnapping under both asportation and confinement theories, enhanced by the additional offenses of criminal sexual assault and aggravated criminal sexual assault. Defendant was also tried on one count of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(4) (West 2004)), which alleged criminal sexual assault during the course of a kidnapping.[1]

At trial, T.C. testified to the events recited above. She additionally testified that after defendant was arrested, she was brought to the police station, and then taken to Holy Cross Hospital. At the hospital, both a medical examination and a sexual assault kit were performed. T.C. testified that she had scrapes and a neck ache, and defendant's arrest report also indicated that T.C. received "Scrapes/Bruises." T.C. testified that she received a

---

[1]Defendant was charged in a nine-count indictment with various offenses relating to kidnapping and criminal sexual assault, but was tried only on counts one through five. Prior to trial, the State entered a *nolle prosequi* on counts six through nine.

prescription for Tylenol. The parties stipulated that defendant consented to an oral swab for DNA analysis, and that semen recovered from T.C. matched defendant's DNA profile.

The parties also stipulated that defendant initially denied knowing T.C. at all. If called to testify, Chicago police officer Gladys Garza would state that on June 14, 2004, at approximately 5:48 p.m., defendant was informed of his *Miranda* rights, waived them, and gave a statement to two Chicago police detectives and a Cook County assistant State's Attorney. Defendant spoke in Spanish and Officer Garza translated. Defendant stated that he was at home until approximately 8:15 a.m., when he walked to a local convenience store. Defendant then walked to the garage of his friend's home to work on a car. Defendant volunteered the first name of his friend, but did not know his friend's last name. Defendant was alone in his friend's garage; he obtained a key to the garage from under a doormat. Defendant was in his friend's garage all morning until he saw police at his home. Defendant let the police into his garage with his own key. Defendant denied riding in a vehicle with other people that morning and denied picking up a woman. Defendant stated that he had never before seen T.C.

The parties additionally stipulated that defendant was arrested on June 14, 2004, and was released the next day. On January 5, 2005, an arrest warrant was issued and, on February 9, 2005, defendant turned himself in pursuant to the warrant.

At trial, defendant's theory of the case, as indicated by his trial counsel's opening statement and closing argument, was that defendant gave T.C. money in exchange for consensual sex. Further, when T.C. failed to extract more money from defendant, she sought revenge by falsely accusing defendant of these offenses. Defendant testified through an interpreter as follows. At ap-

proximately 9:15 a.m. on June 14, 2004, defendant went to a dollar store located at 62nd Place and Kedzie Avenue. Defendant purchased a $3 phone card with a $20 bill and received 17 one-dollar bills. Defendant already had eight one-dollar bills. T.C. was standing outside of the store as defendant came out counting his 25 one-dollar bills. T.C. made hand gestures toward her mouth, which defendant understood as an offer for sex. Defendant initially testified that he said "25" and T.C. replied "okay," but under further questioning testified that T.C. said "$25" and he replied "okay."

Defendant instructed T.C. to "come on." Defendant walked down an alley to his garage and T.C. walked approximately three steps behind him. They passed several houses on the block on the way to defendant's garage. When they reached defendant's garage, defendant entered the side door, raised the overhead door, and told T.C. to "come on." T.C. then entered the garage and defendant lowered the overhead door. No one else was in the garage. T.C. then performed oral sex on defendant. T.C. then undressed, and defendant opened the door to the Geo. T.C. then leaned into the car and they had vaginal sex. Defendant then gave $25 to T.C., but she asked for more money. Defendant told T.C. that he had no more money, and opened the overhead door. T.C. cursed defendant as she left the garage.

Defendant additionally testified that he communicated with T.C. through hand gestures because he does not speak English. However, defendant also testified that he said "okay" and "come on" to T.C. in English.

About one hour after T.C. left defendant, he was working in another garage approximately half a block away. Defendant saw lights from police cars at his garage. Defendant's mother-in-law was at home that morning. After she telephoned him, he went to speak to the police. Defendant was taken to a police station, where he gave a

statement through an interpreter. Defendant admitted that he told police that he did not know T.C. and denied having sex with her. Defendant testified that he lied to police because he feared losing his wife and home because of having sex with T.C. Several months later, police contacted defendant and he spoke to the detective assigned to the case. This time, defendant told the detective the account of events he testified to in court, and apologized to the detective for lying. Defendant denied kidnapping T.C. in a van with two other men.

Eneminia Cruz testified on behalf of the defense. Cruz lived one house away from defendant. At approximately 9:30 a.m. on June 14, 2004, Cruz went to the gangway behind her home to throw out the garbage. She saw defendant in the alley walking past her garage with a heavy-set African-American woman walking about three feet behind him. Cruz did not see the woman's face or otherwise know her. Cruz saw defendant enter his garage side door and open the overhead door. Cruz also saw the woman walk into the garage and saw the overhead door close. Cruz did not know what happened inside of the garage. Cruz did not see a dark SUV or three men near defendant's garage that day. Approximately one hour later, Cruz saw police at defendant's house. Approximately one week later, Cruz told defendant's wife what Cruz saw. Not only had Cruz been defendant's neighbor for seven or eight years, but she was also defendant's friend. Defendant asked her to testify on his behalf.

At the close of evidence and argument, the trial court found defendant guilty as charged on the five counts on which he was tried. The court specifically found that "the State has proved each and every one of the essential allegations of these counts."

Defendant filed a "Motion For A New Trial," in which he asked the trial court to set aside the finding of

guilty of aggravated kidnapping and aggravated criminal sexual assault and to grant him a new trial. Defendant contended that the State failed to prove him guilty of those offenses beyond a reasonable doubt. Defendant subsequently filed a supplemental posttrial motion, in which he claimed to have discovered new defense witnesses.

At the hearing on the posttrial motion, the trial court agreed to hear from a new witness. David Muniz testified that he was a manager at Madison Brown Telemarketing, located at 3209 West 62nd Place, from February through May 2004. During that time, Madison Brown never employed T.C. The business closed on May 31, 2004, and did not reopen. Muniz returned for three days in June 2004 to help the owner of the business pack. Muniz was at home on June 14, 2004, and did not know what occurred on that date at that address.

The trial court denied defendant's motion for a new trial. The court observed that while Muniz testified regarding operations at Madison Brown from February through May 2004, he did not testify as to what happened at that location in June or on the date in question. The court found that Muniz's testimony was not newly discovered evidence or sufficiently compelling to change its ruling.

The court proceeded to sentencing. At the close of the sentencing hearing, the trial court observed that defendant was guilty of five counts, and that there would be mergers. The court sentenced defendant to a six-year prison term on count I, which charged defendant with aggravated criminal sexual assault predicated on kidnapping. The court also sentenced defendant to a consecutive six-year prison term on count II, which charged defendant with aggravated kidnapping, alleging that he committed kidnapping, under a confinement theory, and additionally committed criminal sexual assault.

On appeal, defendant contended that (1) his convictions for aggravated kidnapping and aggravated criminal sexual assault created an impermissible double enhancement, and (2) the evidence was insufficient to convict him of aggravated kidnapping and aggravated criminal sexual assault. The appellate court did not find the evidence so unsatisfactory or improbable that it created a reasonable doubt of defendant's guilt. However, the appellate court reduced defendant's aggravated kidnapping conviction to kidnapping, and remanded the cause to the trial court for resentencing. No. 1—06—0632 (unpublished order under Supreme Court Rule 23).

The State appeals. Additional pertinent facts will be discussed in the context of the issues raised on appeal.

## II. ANALYSIS

Before this court, the State contends that defendant was properly convicted of both aggravated kidnapping and aggravated criminal sexual assault because convictions for both offenses did not constitute an impermissible double enhancement, and did not otherwise violate the one-act, one-crime doctrine of *People v. King*, 66 Ill. 2d 551 (1977). Also, defendant cross-appeals, contending that the State failed to prove him guilty beyond a reasonable doubt of kidnapping. We first address defendant's cross-appeal.

### A. Kidnapping

On cross-appeal, defendant contends that the evidence fails to establish that he committed the offense of kidnapping. Defendant was found guilty of several counts of aggravated kidnapping (720 ILCS 5/10—2(a)(3) (West 2004)), which alleged that he committed, *inter alia*: kidnapping (asportation) and criminal sexual assault (count IV), and kidnapping (confinement) and criminal sexual assault (count II). Defendant was also found guilty of one count of aggravated criminal sexual assault (720

ILCS 5/12—14(a)(4) (West 2004)), which alleged that he committed criminal sexual assault during the course of a kidnapping (count I). Although the appellate court reduced defendant's aggravated kidnapping conviction to that of kidnapping, the court held that the evidence was sufficient to convict defendant of kidnapping as the predicate felony to his aggravated criminal sexual assault conviction. Defendant now claims that the State failed to prove him guilty beyond a reasonable doubt of "any kidnapping offense." Further, as the predicate offense is lacking, defendant reasons, we must also reduce his aggravated criminal sexual assault conviction to criminal sexual assault and remand for resentencing.

Of course, the State carries the burden of proving beyond a reasonable doubt each element of an offense. *Jackson v. Virginia*, 443 U.S. 307, 315-16, 61 L. Ed. 2d 560, 571, 99 S. Ct. 2781, 2786-87 (1979); *In re Winship*, 397 U.S. 358, 361-64, 25 L. Ed. 2d 368, 373-75, 90 S. Ct. 1068, 1071-73 (1970); *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004). Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *Jackson*, 443 U.S. at 318-19, 61 L. Ed. 2d at 573, 99 S. Ct. at 2788-89; *People v. Cooper*, 194 Ill. 2d 419, 430-31 (2000). "Under this standard of review, it is the responsibility of the trier of fact to 'fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *People v. Howery*, 178 Ill. 2d 1, 38 (1997), quoting *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; accord *People v. Campbell*, 146 Ill. 2d 363, 375 (1992). Therefore, a reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of

evidence or the credibility of witnesses. *Cooper*, 194 Ill. 2d at 431; *Campbell*, 146 Ill. 2d at 375. A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Howery*, 178 Ill. 2d at 38; *Campbell*, 146 Ill. 2d at 375; *People v. Tye*, 141 Ill. 2d 1, 13 (1990). This same standard of review applies regardless of whether the defendant received a bench or jury trial. *Cooper*, 194 Ill. 2d at 431.

The Criminal Code of 1961 defines kidnapping as follows:

> "§10—1. Kidnaping. (a) Kidnaping occurs when a person knowingly:
>> (1) And secretly confines another against his will, *or*
>> (2) By force or threat of imminent force carries another from one place to another with intent secretly to confine him against his will, *or*
>> (3) By deceit or enticement induces another to go from one place to another with intent secretly to confine him against his will." (Emphases added.) 720 ILCS 5/10—1(a) (West 2004).

Thus, a defendant can commit the offense of kidnapping in any one of three ways: confinement, asportation, or inducement. 720 ILCS Ann. 5/10—1, Committee Comments—1961, at 297 (Smith-Hurd 2002) ("The three subsections of 10—1(a) are designed to cover the three methods usually employed in kidnaping"). Defendant was charged with kidnapping under both asportation and confinement theories.

Our appellate court has articulated factors to consider when determining whether an asportation or detention is merely ancillary to another offense, or whether it rises to the level of an independent crime of kidnapping. These factors include: (1) the duration of the asportation or detention; (2) whether the asportation or detention occurred during the commission of a separate offense; (3) whether the asportation or detention is inherent in the

separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense. See *People v. Watson*, 342 Ill. App. 3d 1089, 1098 (2003); *People v. Jackson*, 331 Ill. App. 3d 279, 294 (2002); *People v. Casiano*, 212 Ill. App. 3d 680, 687 (1991); *People v. Gully*, 151 Ill. App. 3d 795, 800 (1986).

Applying these factors to the present case, we conclude that the kidnapping of T.C., under an asportation theory, was not merely incidental to the offense of criminal sexual assault. First, after defendant forced T.C. off the street and into the SUV, she was driven for four to five minutes. This satisfies the first factor. " '[A] kidnaping conviction is not precluded by the brevity of the asportation or the limited distance of the movement.' " *Jackson*, 331 Ill. App. 3d at 294, quoting *People v. Ware*, 323 Ill. App. 3d 47, 54 (2001). This factor has been found satisfied in cases with asportation of less duration than that found in this case. See, *e.g.*, *People v. Quintana*, 332 Ill. App. 3d 96, 104-07 (2002) (collecting cases); *Casiano*, 212 Ill. App. 3d at 687-88. The second factor is satisfied because the asportation occurred prior to, rather than during, the criminal sexual assault. *Jackson*, 331 Ill. App. 3d at 294-95 (collecting cases). Third, asportation is not an element of criminal sexual assault. See 720 ILCS 5/12—13 (West 2004). Thus, defendant committed a separate offense when he detained and transported T.C. against her will to his garage. See *Jackson*, 331 Ill. App. 3d at 295; *Ware*, 323 Ill. App. 3d at 56; *People v. Sherrod*, 220 Ill. App. 3d 429, 436 (1991). Fourth, the asportation posed a significant danger to T.C. independent of the danger created by the criminal sexual assault. The danger arose from the potential for more serious activity due to the privacy of the final destination—the closed garage. See, *e.g.*, *Jackson*, 331 Ill. App. 3d at 295; *Ware*, 323 Ill. App. 3d at 56; *Sherrod*, 220 Ill.

App. 3d at 436. On this evidence, a rational trier of fact could have found the independent offense of kidnapping under an asportation theory.

Defendant was also charged with committing kidnapping under a confinement theory. *Secret* confinement is a necessary element under the confinement theory of kidnapping. See 720 ILCS 5/10—1(a)(1) (West 2004). "Secret" denotes concealed, hidden, or not made public. *People v. Phelps*, 211 Ill. 2d 1, 8 (2004); *People v. Mulcahey*, 72 Ill. 2d 282, 285 (1978). The secret confinement element may be shown by proof of the secrecy of the confinement or the secrecy of the place of confinement. *Phelps*, 211 Ill. 2d at 8; *People v. Enoch*, 122 Ill. 2d 176, 194-96 (1988). Confinement includes, but is not limited to, enclosure within something, most commonly a structure or an automobile. See, *e.g.*, *Enoch*, 122 Ill. 2d at 195; *People v. Bishop*, 1 Ill. 2d 60, 64 (1953); *Quintana*, 332 Ill. App. 3d at 104.

In the present case, T.C. was taken in the SUV to defendant's garage. She was pushed out of the van into the garage. The SUV then drove out of the garage, and the overhead door closed. She was enclosed in the garage, and the fact of her confinement was secret. See, *e.g.*, *People v. Reeves*, 385 Ill. App. 3d 716, 727-28 (2008) (enclosed in garage with door closed). On this evidence, a rational trier of fact could have found the offense of kidnapping under a confinement theory.

Continuing his challenge to the sufficiency of the evidence, defendant points to conflicts in the evidence. According to defendant, T.C. propositioned him for consensual sex in exchange for money. In addition to defendant's testimony, Cruz testified that she saw a heavy-set African-American woman freely walk behind defendant and enter his garage. However, Cruz did not see the woman's face. Also, Muniz testified that, during the four months preceding defendant's offenses, T.C. was

not employed at the telemarketing business located at the address to which T.C. testified she was walking. Defendant also attacks T.C.'s credibility. Defendant claims that "T.C.'s testimony was woefully deficient and unbelievable." Viewing her testimony as uncorroborated, defendant argues that "T.C. related a fantastical account of kidnapping—from beginning to end."

We cannot accept this challenge to the sufficiency of the evidence. It remains the firm holding of this court that the testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant. *People v. Morehead*, 45 Ill. 2d 326, 329-30 (1970); *People v. Novotny*, 41 Ill. 2d 401, 411 (1968); *People v. Johnson*, 24 Ill. 2d 195, 198 (1962). When considering a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. *People v. Collins*, 214 Ill. 2d 206, 217 (2005); *People v. Schmalz*, 194 Ill. 2d 75, 80 (2000). Rather, in a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence. See *People v. McDonald*, 168 Ill. 2d 420, 448-49 (1995); *People v. Wittenmyer*, 151 Ill. 2d 175, 191-92 (1992); *People v. Slim*, 127 Ill. 2d 302, 307 (1989). A reviewing court will not reverse a conviction simply because the evidence is contradictory (*People v. Berland*, 74 Ill. 2d 286, 306 (1978) (collecting cases)) or because the defendant claims that a witness was not credible (*People v. Evans*, 209 Ill. 2d 194, 211-12 (2004); *People v. Tenney*, 205 Ill. 2d 411, 428 (2002)).

In finding defendant guilty as charged, the trial court expressly made several credibility determinations. The court found that T.C.'s testimony, "as the Court watched it, heard it, observed it was clear, was candid, it was believable." In contrast, the trial court found that

defendant's initial false exculpatory statement to police negatively impacted his credibility. "The trier of fact is entitled to disbelieve defendant's explanation of the incriminating circumstances in which he was found especially in view of testimony that defendant had told a different story at the time of his arrest." *Morehead*, 45 Ill. 2d at 330. Defendant did testify that he initially lied to police because he feared losing his wife and home. However, the trier of fact is not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt. See *Howery*, 178 Ill. 2d at 37; *McDonald*, 168 Ill. 2d at 447; *People v. Arndt*, 50 Ill. 2d 390, 396 (1972).

Further, the trial court found that Muniz's testimony was neither newly discovered nor sufficient to set aside its finding of guilt. As the State argued before the trial court, Muniz could testify only as to the existence of Madison Brown from February through May 2004. Muniz could not testify as to any telemarketing business at that address on June 14, 2004, the date of the offenses. The trial judge, who saw and heard all the witnesses, including T.C. and defendant, was in a much better position than are we to determine their credibility and the weight to be accorded their testimony. See *Wittenmyer*, 151 Ill. 2d at 191-92; *Berland*, 74 Ill. 2d at 306; *People v. Woods*, 26 Ill. 2d 582, 585 (1963).

This issue squarely presents a question of credibility, with the complaining witness relating one version of events and the defense witnesses relating a completely different picture. It was for the trial court to find that T.C.'s testimony was sufficiently consistent throughout the trial to support defendant's convictions. It was likewise for the trial court to resolve the discrepancies that appeared during trial and defendant's attacks upon T.C.'s character. See *People v. Franceschini*, 20 Ill. 2d 126, 131 (1960); *People v. Long Nhu Le*, 346 Ill. App. 3d

41, 49-51 (2004); *People v. Bowen*, 241 Ill. App. 3d 608, 618-21 (1993).

After reviewing the entire record in the light most favorable to the prosecution, we hold that T.C.'s testimony was sufficient to prove defendant guilty beyond a reasonable doubt. T.C. testified that she was walking alone when an SUV approached her. Defendant and another passenger exited the SUV, forced T.C. inside, and hit her neck to prevent her from looking up. After being transported to a garage, she was placed in the doorway of a Geo Tracker, where she resisted defendant's attempt to force her to perform oral sex. Defendant turned T.C. around to face the inside of the Geo, pulled her pants down to her knees, and forced her to bend over. Defendant touched T.C.'s vagina with his hand and then, without consent, subjected her to vaginal intercourse. Using a tool found on the garage floor, T.C. hit the SUV's driver and used the distraction to escape and make immediate outcry. As a result of the attack she suffered scrapes and bruises, which the defense never addressed. We agree with the appellate court that the evidence was not so improbable or unsatisfactory that no rational trier of fact could have found defendant guilty beyond a reasonable doubt of kidnapping under either an asportation or confinement theory. Accordingly, we affirm defendant's aggravated criminal sexual assault conviction predicated on kidnapping.

## B. Double Enhancement

The State appeals from the appellate court's reduction of defendant's aggravated kidnapping conviction to kidnapping. The court held that defendant's convictions for aggravated kidnapping and aggravated criminal sexual assault created an impermissible double enhancement. We disagree.

The appellate court relied on *People v. McDarrah*, 175 Ill. App. 3d 284 (1988). In *McDarrah*, the defendant

was convicted of several offenses including aggravated kidnapping and aggravated criminal sexual assault. Defendant was specifically charged with kidnapping (confinement) enhanced by the predicate felony of criminal sexual assault. Defendant was also charged with criminal sexual assault, enhanced by the predicate felony of kidnapping (confinement). The *McDarrah* court reasoned: "Thus, given the form of the charging instruments and the predicate felony upon which each aggravated crime is based, it becomes obvious that proof of identical elements was necessary for convictions of both crimes." *McDarrah*, 175 Ill. App. 3d at 299. As the court viewed the case:

"[t]he State has based the aggravated criminal sexual assault on defendant's commission of the same felonies (criminal sexual assault through sexual penetration against the victim's will coupled with kidnaping by knowingly and secretly confining the victim against her will) that underlie the charge for aggravated kidnaping. Thus, *** convictions for both require proof of the same facts. This form of charging constitutes a double aggravation for the same conduct. *** While a defendant may properly be convicted of both the aggravated crime and the second felony underlying that crime [citations], permitting the State to turn around and use the aggravated crime to enhance the second felony would create two aggravations and constitute a double enhancement of the penalty. We do not believe such a result was intended. Therefore, we hold that only one aggravation based on a combination of the same felonies is permitted." *McDarrah*, 175 Ill. App. 3d at 300.

Accordingly, the *McDarrah* court vacated the defendant's aggravated kidnapping conviction.

In the present case, the appellate court found *McDarrah* "persuasive" and reduced defendant's aggravated kidnapping conviction to kidnapping "in light of *McDarrah*." The appellate court's reliance on *McDarrah* was erroneous for two reasons.

First, the appellate court's reliance on *McDarrah* was erroneous as a matter of fact. The appellate court concluded simply: "The instant case presents the same convictions that were found erroneous in *McDarrah*." However, a careful review of the record shows that this case is distinguishable from *McDarrah*. In *McDarrah*, the defendant was charged specifically with only kidnapping under a confinement theory, which was the single factor in both enhanced offenses. *McDarrah*, 175 Ill. App. 3d at 299. In contrast, defendant in this case was separately charged and found guilty of aggravated kidnapping under *both* asportation and confinement theories, *each* of which could supply the predicate felony to the aggravated criminal sexual assault offense. Thus, no single factor was used to enhance each offense. See, *e.g.*, *People v. Gonzalez*, 151 Ill. 2d 79, 85 (1992) (finding that a separate, independent factor was used only once); *People v. Brown*, 214 Ill. App. 3d 836, 847 (1991) (observing that the defendant's challenge to his aggravated kidnapping and aggravated criminal sexual assault convictions "ignores the asportation element of defendant's actions").

Second, as a matter of law, "the double-enhancement rule prohibits a single factor from being used twice with respect to the *same offense*." (Emphasis in original.) *Phelps*, 211 Ill. 2d at 17. This court has explained:

> "A double enhancement occurs when either (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed, or (2) the same factor is used twice to elevate the severity of the offense itself." *People v. Guevara*, 216 Ill. 2d 533, 545 (2005), citing *Phelps*, 211 Ill. 2d at 11-13.

In *Phelps*, this court could not find "any principle that prohibits the use of a single factor with respect to separate and distinct offenses." *Phelps*, 211 Ill. 2d at 17.

In the present case, each predicate felony was used only once to enhance a separate offense. Defendant was convicted of aggravated kidnapping predicated on criminal sexual assault, and aggravated criminal sexual assault predicated on kidnapping. As is seen, criminal sexual assault was used only once to enhance the kidnapping conviction, and kidnapping was used only once to enhance the criminal sexual assault conviction. Since no single factor was used twice to enhance both offenses, there was no double enhancement. See *Phelps*, 211 Ill. 2d at 17. *McDarrah* was decided 16 years prior to *Phelps* and did not have the benefit of its guidance. Accordingly, that portion of *McDarrah* which held that a single factor could not be used to enhance two separate and distinct offenses (*McDarrah*, 175 Ill. App. 3d at 300) is hereby overruled.

Viewed either as a matter of law or fact: "No double use of a single factor occurred and, thus, no impermissible double enhancement resulted." *Gonzalez*, 151 Ill. 2d at 85.

We lastly observe that defendant's convictions for aggravated kidnapping and aggravated criminal sexual assault do not otherwise violate the one-act, one-crime doctrine of *People v. King*, 66 Ill. 2d 551 (1977). Defendant committed multiple acts. This court has held that " '[a] person can be guilty of two offenses when a common act is part of both offenses.' " *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996), quoting *People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983). "As long as there are multiple acts as defined in *King*, their interrelationship does not preclude multiple convictions ***." *People v. Myers*, 85 Ill. 2d 281, 288 (1981). Further, neither aggravated kidnapping nor aggravated criminal sexual assault was charged as a lesser-included offense of the other. See *People v. Crespo*, 203 Ill. 2d 335, 345 (2001); *Brown*, 214 Ill. App. 3d at 847; *People v. Hines*, 165 Ill. App. 3d 289, 301 (1988).

Therefore, we hold that defendant was properly convicted of both offenses. See *Phelps*, 211 Ill. 2d at 17; *Rodriguez*, 169 Ill. 2d at 190-91.

In sum, we affirm that part of the appellate court judgment which upheld defendant's aggravated criminal sexual assault conviction. We reverse that part of the appellate court judgment which reduced defendant's aggravated kidnapping conviction to kidnapping. We lastly note that the trial court imposed a "sexual assault fine" of $200. The amount of the fine was increased from $100 effective January 2005. Pub. Act 93—810, eff. January 1, 2005 (amending 730 ILCS 5/5—9—1.7(b)(1) (West 2004)). The trial court imposed the increased amount when defendant was sentenced in January 2006. On appeal, defendant contended that the fine must be reduced to $100 because that was the statutorily prescribed amount when defendant was charged in June 2004. The State conceded error. The appellate court accordingly reduced defendant's sexual assault fine to $100. As the parties do not challenge the appellate court's modification, it remains undisturbed.

### III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court of Cook County is affirmed, as modified.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed as modified.*