# Illinois Official Reports

## Appellate Court

---

*People v. Fein*, 2017 IL App (1st) 152091

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL FEIN, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-2091 |
| Filed | December 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-5363; the Hon. Nicholas R. Ford, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part.<br>Remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and David T. Harris, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Tyler J. Cox, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Justices Pucinski and Hyman concurred in the judgment and opinion. |

## OPINION

¶ 1    Following a jury trial in Cook County circuit court, defendant Michael Fein was convicted of theft from a person by obtaining unauthorized control over certain property (720 ILCS 5/16-1(a)(1)(A) (West 2012)) and sentenced to 10 years' imprisonment. On appeal, he argues (1) the evidence was insufficient to prove beyond a reasonable doubt that he committed theft by obtaining unauthorized control over the victim's property, (2) the trial court erred by failing to conduct a proper preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and (3) his mittimus lists the incorrect conviction and felony classification. For the following reasons, we affirm Fein's conviction, remand, and order his mittimus corrected.

¶ 2    Fein and codefendant Lorraine Adams were charged with armed robbery, for knowingly taking "a purse and its contents, from the person or presence of Marquianna Anderson, by the use of force or by threatening the imminent use of force, and they carried on or about their persons or were otherwise armed with a firearm."[1] The defense theory of the case was that Fein was a con artist who tricked Anderson into willingly giving him money and that he was not guilty of armed robbery but instead committed theft.

¶ 3    At approximately 1 p.m. on September 6, 2013, Anderson withdrew money from the bank and had $300 cash in her wallet. She went to a strip mall at Halsted and 47th Streets to go shopping at a sports store. She parked far from the store's entrance because the parking lot was full. As she walked toward the store, a man and woman, later identified as Fein and Adams, approached her. Fein stated that he was from Iowa, his name was Dave, and he had found a wallet. He asked Anderson whether he would receive a reward for turning the wallet in to the police. Anderson attempted to walk away, but Fein showed her that he had a gun in his waistband. Adams did not speak, but on Fein's instruction, she took Anderson's purse. Once they obtained her purse, Fein and Adams ran away with it. As they were running, Anderson observed them throw her purse into the street on 47th. She ran to retrieve her purse, and Fein and Adams continued running. Anderson did not chase them. She recovered her purse but discovered that her money was missing.

¶ 4    As she was recovering her purse, Anderson's grandfather was "coming up" the street. She told him that she had been robbed, and he called the police. Within minutes, the police arrived at the strip mall. Anderson spoke with the officers and gave them physical descriptions of Fein and Adams. She told the officers that Fein had a gun. On October 10, 2013, and November 17, 2013, respectively, Anderson identified Fein and Adams in photographic arrays. She spoke with police on several occasions and each time told them that Fein was in possession of a gun during the incident. Anderson denied giving Fein and Adams her purse or offering them money.

¶ 5    Anderson acknowledged that a police car was in the parking lot when Fein initially approached her and she did not signal to the police. The police car eventually drove away. There were cameras in the parking lot, but she did not attempt to find mall security or inform anyone in the stores that she had been robbed. The entire incident lasted six to seven minutes. Anderson only saw the handle of the gun in Fein's waistband, and he did not take the gun out of his pants. Anderson denied telling officers that Fein and Adams approached her on the

---

[1]Fein and Adams were tried in separate but simultaneous trials. It is not clear from the record whether Adams was convicted. Adams was tried in a bench trial and is not a party to this appeal.

sidewalk. She further denied telling officers that Fein and Adams walked, rather than ran, away from the scene.

¶ 6        On October 7, 2013, Chicago police Detective Fred Marshall was assigned to investigate the incident. Pursuant to his investigation, he compiled two photographic arrays, one with male subjects and one with female subjects. Anderson identified Fein in one photo array and Adams in the second photo array. Marshall was present when Fein was arrested on November 16, 2013. Adams was later arrested on February 12, 2014. Each time Marshall spoke with Anderson, she indicated that Fein had a gun during the incident. Marshall could not recall whether Anderson reported Fein and Adams walking or running away from the scene. His report indicated that Anderson reported the individuals running away. But an initial report, which summarized a first responder's notes, indicated that Anderson reported them walking away.

¶ 7        In the course of his investigation, Marshall went to the strip mall. He was unable to obtain video surveillance footage because he was informed that the strip mall cameras did not point far enough back into the parking lot to where the incident occurred. Additionally, there were no Chicago police pod cameras in the vicinity.

¶ 8        Marshall acknowledged that he did not recover additional evidence to corroborate Anderson's statements that Fein possessed a gun. He did not obtain a photograph of the gun used. Fein was arrested in his vehicle, no gun was recovered, and his home was not searched.

¶ 9        Fein testified in his defense and stated that on September 6, 2013, he was in the strip mall on Halsted with Adams, and they were planning to "hit a lick," which meant that they were trying to swindle someone out of money. The two of them were playing a "con game" called "pigeon drop," where they would deceive someone out of money. But he denied using a gun because he did not believe in guns and does not carry them.

¶ 10       Fein and Adams observed Anderson in the parking lot, and when she got closer to them, they approached her and began talking to her. Fein told her he was "Dave Washington" and had just moved to Chicago from Iowa and worked at a nearby store, Fairplay. In reality, Fein did not work at Fairplay, and he was not "Dave from Iowa." He told Anderson that he had found a wallet, which contained almost $1000 in cash, and asked whether he would receive a reward for turning it in. Anderson told him he should keep the money. The wallet was actually Fein's own wallet with his own cash inside it. Fein offered to give both Anderson and Adams (who Fein pretended not to know) $225 in exchange for them mailing the identification and credit cards found in the wallet back to the owner.

¶ 11       Fein, Anderson, and Adams walked to a restaurant. Fein then left Adams and Anderson and went into his "work," Fairplay, to get change for the money found in the wallet. When he returned, he told Anderson and Adams that the wallet additionally had $11,000 in blank cashier's checks and Fein and his boss intended to keep the cashier's checks. However, Fein's boss offered to give each woman $1000 in exchange for keeping quiet about the wallet and its contents. Anderson and Adams both agreed, and Anderson was excited about the prospect of getting $1000. Fein sent Adams to Fairplay to talk to his boss, and she returned shortly thereafter, holding an envelope purportedly containing $1000 in cash. Adams did not actually get an envelope with cash because she and Fein fabricated the entire story.

¶ 12       Adams told Anderson that Fein's boss only wanted to deal with Fein but that Fein would have to bring proof that Anderson was employed before giving her a cut of the money so that she would not return after a few days to ask for more cash in exchange for her silence.

According to Fein, Anderson offered to give him $290 in cash for the purpose of demonstrating that she had cash and that she was employed. Adams gave Fein the envelope of money that she purportedly received from his boss so that Fein could prove to his boss that Anderson's money did not come from Adams. Fein stated that the purpose of having Adams hand over her cut was to make Anderson feel comfortable about giving Fein her money. Anderson then handed Fein $290 in cash.

¶ 13 Fein left the restaurant to speak to his "boss" on behalf of Anderson. When he returned, he told Anderson that his boss wanted her to go into Fairplay to sign an affidavit stating she would not return after several days to demand more money. Anderson went inside Fairplay, and Fein and Adams drove away in Fein's car with Anderson's money. Fein testified that the entire story was a scam that he made up to deceive Anderson into giving him her money. He and Adams were with Anderson for about 15 to 20 minutes. He denied flashing a gun at Anderson and denied forcing her to give him money. On the contrary, Fein admitted that he deceived Anderson into giving him money.

¶ 14 In rebuttal, the State offered a certified copy of conviction for Fein's 2012 conviction for theft.

¶ 15 Outside the presence of the jury, the parties went over jury instructions with the court. At one point, the court stated, "Let me just indicate that I'm going to give a theft instruction predicated on the defendant's testimony," to which defense counsel responded, "Okay." Later while discussing jury instructions outside of the jury's presence, the following occurred.

"[THE COURT]: The defendant is charged with the offense of armed robbery. The defendant has pleaded not guilty. Under the law, a person charged with the offense of armed robbery may be found not guilty of armed robbery, not guilty of theft from a person or guilty of armed robbery or guilty of theft from a person. That's your request, is that right, defense?

[DEFENSE COUNSEL]: Yes, Judge."

¶ 16 The jury was instructed on armed robbery and theft from a person. The theft instruction read, "A person commits the offense of theft from the person when he knowingly obtains unauthorized control over the property by taking said property from the person of another and intends to deprive the owner permanently of the use or benefit of the property." Following closing arguments, the jury found Fein guilty of theft from a person but not guilty of armed robbery. Before sentencing, Fein filed a *pro se* "petition for relief from judgment," alleging trial counsel was ineffective for submitting the "improper [theft] instruction" to the jury because he was not charged with theft and it was not a lesser-included offense of armed robbery.

¶ 17 At a hearing on the posttrial motion for new trial filed by defense counsel, the court asked Fein if he wanted to argue his *pro se* petition before the court. Fein claimed he could not remember that far back because he was recovering from a recent surgery on his head. The court asked whether Fein was mentally fit to be sentenced and, after a brief conversation, noted that Fein understood everything that was happening. The court then stated, "I have reviewed both the materials tendered by the defendant, as well as your attorney's materials, and motion for new trial is denied."

¶ 18 The court then sentenced Fein to an extended term of 10 years' imprisonment and 1 year of mandatory supervised release, noting Fein's extensive criminal history. Defense counsel filed a motion for reconsideration of sentence, which the court denied. This appeal followed.

¶ 19 On appeal, Fein first contends the State failed to prove him guilty beyond a reasonable doubt of theft by obtaining unauthorized control.

¶ 20 On a challenge to the sufficiency of the evidence, we inquire " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) *People v. Davison*, 233 Ill. 2d 30, 43 (2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In so doing, we draw all reasonable inferences in favor of the State (*id.*) and we do not retry the defendant (*People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The State must prove each element of an offense beyond a reasonable doubt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). We will not overturn a criminal conviction "unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Givens*, 237 Ill. 2d 311, 334 (2010).

¶ 21 As relevant here, a person commits theft when he knowingly obtains or exerts unauthorized control over the property of the owner with the intent to deprive the owner permanently of the use or benefit of the property. 720 ILCS 5/16-1(a)(1)(A) (West 2012). Fein challenges only the element of unauthorized control, claiming that the jury must have disbelieved Anderson's testimony (because it acquitted him of armed robbery), leaving only his testimony that Anderson voluntarily gave him her money, which he and Adams then absconded with.

¶ 22 The State's evidence established that Fein and Adams approached Anderson in a parking lot and forcibly took her purse without permission, which contained $300 in cash, and then fled the scene. Anderson flagged down her grandfather, reported the incident to police, and later identified both Fein and Adams in photographic arrays. Based on this evidence, we do not find that the "evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt" of theft by unauthorized control. See *Givens*, 237 Ill. 2d at 334.

¶ 23 But Fein argues that since he was acquitted of armed robbery, the only other conclusion supported by the evidence is that Anderson willingly gave him her money during the con game, conduct that would not support the unauthorized control element of theft. The trier of fact was not obligated to accept Fein's version of events. *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001). Although the jury did not find Fein guilty of armed robbery, that does not mean that it rejected the entirety of Anderson's testimony, as Fein contends. Based on the verdict, it appears that the jury found that the evidence established beyond a reasonable doubt that Fein committed theft but not that he did so by using a gun. The trier of fact may accept as much or as little of the evidence as it finds credible (*People v. Rivera*, 255 Ill. App. 3d 1015, 1023 (1993)) and is responsible for resolving conflicts in the evidence (*Siguenza-Brito*, 235 Ill. 2d at 228). Accordingly, we affirm Fein's conviction for theft by unauthorized control.

¶ 24 Fein next contends that the trial court erred by failing to inquire into the factual basis of his ineffective assistance of counsel claim pursuant to *Krankel*, 102 Ill. 2d 181. Before sentencing, Fein filed a *pro se* petition for relief from judgment, alleging ineffective assistance of counsel based on defense counsel requesting the jury instruction on theft. He argues that allegation was sufficient to trigger a *Krankel* inquiry, but the court did not conduct the requisite preliminary inquiry. Fein acknowledges that he initially told the court he could not argue the motion

because he had surgery on his head; however, he asserts that, after the court determined he was fit to be sentenced, it should have returned to his motion asserting ineffective assistance of counsel. He requests that we remand the case for the trial court to conduct a preliminary inquiry under the standard set forth in *Krankel*.

¶ 25 When a defendant files a *pro se* posttrial motion for a new trial based on ineffective assistance of counsel, *Krankel* requires that the trial court inquire into the factual basis of the defendant's claim. *People v. McCarter*, 385 Ill. App. 3d 919, 940 (2008). If the defendant's claim indicates possible neglect, the trial court must appoint new counsel to argue the claim of ineffective assistance, pursuant to *Krankel*. *Id.* If, however, the defendant's claim lacks merit or strictly concerns matters of trial strategy, "then the court may deny the motion without appointing new counsel." *Id.* To determine whether the trial court complied with *Krankel*, the reviewing court asks, "whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel." *People v. Moore*, 207 Ill. 2d 68, 78 (2003). Generally, an adequate inquiry requires "some interchange between the court and trial counsel regarding the complained-of conduct." *McCarter*, 385 Ill. App. 3d at 940-41. The issue of whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo. People v. Jolly*, 2014 IL 117142, ¶ 28.

¶ 26 As an initial matter, we note that the State argues the trial court held a sufficient hearing and implicitly rejected Fein's motion as meritless because it was the trial court who *sua sponte* decided to instruct the jury on the lesser-included offense of theft after hearing Fein's testimony and, thus, counsel could not be ineffective on this basis. A careful review of the record reveals that it is unclear whether the trial court *sua sponte* decided to instruct the jury on theft or whether defense counsel requested a theft instruction. While the parties discussed jury instructions, the trial court stated that it intended to instruct the jury on theft. However, the court later, after reading aloud the theft instruction, stated, "That's your request, is that right, defense?" Defense counsel answered, "Yes, Judge." Additionally, in opening statements, before Fein testified, the defense theory of the case was that Fein was guilty of theft but not armed robbery, which indicates that counsel requested the instruction.

¶ 27 Regardless, Fein unquestionably raised an ineffective assistance of counsel claim in his *pro se* posttrial petition for relief from judgment, and nothing in the record demonstrates that there was an adequate inquiry into the basis of his claims. Admittedly, the court asked Fein to argue his claims, and Fein stated he was unable to because he was recovering from head surgery. However, after further discussion of Fein's mental faculties, the court determined that Fein understood what was happening and was "fully cognizant of every action and interaction" during the motion and sentencing hearing. The court noted it considered Fein's petition and defense counsel's motion for new trial and denied the motion for new trial before proceeding to sentencing. While we express no opinion on the merits of Fein's *pro se* petition, based on the record, we find that the trial court did not adequately inquire into Fein's *pro se* ineffectiveness allegations after concluding he could comprehend what was happening at the hearing. Accordingly, we remand for a preliminary *Krankel* inquiry.

¶ 28 Finally, Fein contends, and the State correctly concedes, that his mittimus is incorrect. It lists his conviction as armed robbery with the corresponding Class X felony classification, when instead the record shows that he was convicted of theft by obtaining unauthorized control (720 ILCS 5/16-1(a)(1)(A) (West 2012)), a Class 3 offense (720 ILCS 5/16-1(b)(4) (West 2012)). Consequently, Fein is entitled to have his mittimus corrected. In the past, pursuant to

Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967), we have ordered the clerk of the circuit court to correct the mittimus. See *People v. Johnson*, 385 Ill. App. 3d 585, 609 (2008) (reviewing court can correct a mittimus at any time). But given the frequency with which we are presented with an obviously incorrect mittimus in criminal cases (often reflecting a more serious offense than the one of which defendant was convicted), we believe it is appropriate to remand to the trial court with directions to correct the mittimus. The error here is plain on the face of the mittimus, and it is not one that was made by the clerk, who can only enter on the mittimus information provided by the State's Attorney. A defendant has a vital interest in a correct mittimus, and trial judges, prosecutors, and defense attorneys all have the responsibility to ensure that a defendant's mittimus is accurate and reflects the offense of which he or she was convicted. We affirm the judgment of the circuit court of Cook County but remand for a preliminary inquiry pursuant to *Krankel*. We also order the trial court to correct Fein's mittimus to reflect the correct conviction and felony classification.

¶ 29        Affirmed in part and reversed in part.
¶ 30        Remanded with directions.