2020 IL App (1st) 181215-U

THIRD DIVISION
September 9, 2020

No. 1-18-1215

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CR 01666 |
| | ) | |
| | ) | Honorable |
| ANTONIO PURCELL, | ) | Carol M. Howard |
| Defendant-Appellant. | ) | Judge Presiding |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Howse and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's robbery conviction is affirmed. State proved beyond reasonable doubt that defendant took property of Frederick Burke and threatened imminent use of force.

¶ 2    Following a bench trial, defendant Antonio Purcell was convicted of robbery. On appeal, he claims the State failed to prove beyond a reasonable doubt that he threatened the imminent use of force. We disagree and affirm the conviction.

¶ 3                                     BACKGROUND

¶ 4    At trial, the State called two witnesses, Frederick Burke and Thomas Freitag.

¶ 5     Frederick Burke testified that on January 16, 2017, at about 12:20 p.m., he was on his way to see a friend, walking by himself, when defendant approached him at the corner of Bishop Street and 67th Marquette Road and asked if he was from around here. Burke replied that he was, in fact, "from around here" and tried to get away from defendant, but defendant kept on following him. Defendant then told Burke that he "look[ed] like an opp." Burke told defendant that he was "not on that gang stuff" and again tried to walk away.

¶ 6     After about ten seconds, defendant came back and asked Burke for a dollar. Burke testified, "[H]e asked me for a dollar and out of fear I was going to give him a dollar . . ." As he dug into his pocket to find a dollar, defendant said, "Matter of fact, give me everything you got out of your pocket."  Burke said that defendant was close to him, but he did not see anything in his hands. As defendant made his demand, however, Burke saw defendant "reaching down his waistline of his pants to grab something" in the "side area" of his waistband, which he assumed to be a gun because "that's where people keep guns at." So, "out of fear," Burke gave defendant "all the money that he had on him at the time." Defendant took the money, walked off, and said, "[K]eep your head up, bro." Burke then called the police and told them what happened. An officer came to take a report the same day. Burke described the defendant as wearing a grey jacket with a hood and black skull cap.

¶ 7     The next day, Burke was on the way to the store with his brother on the same block where Burke was robbed the previous day. Burke saw defendant across the street and said to his brother, "[H]ey, that's the dude that robbed me yesterday." Defendant walked across the street, approached them, and asked where they were from and where they were going. Burke's brother told defendant that they were "from around here" and that they were going to the store. Defendant asked whether they were lying to him, and they denied lying. To get away from defendant, Burke and his brother walked to a porch. Defendant said, "you better not be lying to me" and "I better not f'n find out that you all lying to me" before finally walking off.

¶ 8     Burke and his brother went back to their house and told their mother what happened. Their mother called the police. When the police arrived, Burke told them what happened, and officers asked if Burke would go with them to see if they had the right person. They drove him around the block, and Burke saw defendant in handcuffs. Burke recognized defendant right away and identified him by saying, "That's him. That's definitely him" and "That was definitely the guy that robbed me that tried to rob me today and robbed me yesterday." He recognized him right away, as defendant was wearing the same clothes that he had been wearing the day before and Burke "recognized the whole person."

¶ 9     Chicago Police Detective Thomas Freitag testified that, on January 17, 2017, he was assigned to a follow-up on a robbery that occurred the day before in the 6700 block of South Bishop. Detective Freitag learned that an offender was in custody and spoke with defendant at the Seventh District Police Station. He read defendant his *Miranda* warnings, and defendant indicated that he understood them. When Detective Freitag questioned defendant about the robbery, defendant initially said that he never left the house. But after being told that he was identified by Burke, defendant said that "he may have left the house and gone to the store or gas station." Further, defendant said that "[h]e may have asked somebody for money." When Detective Freitag asked defendant how he could have been identified as having robbed someone, defendant responded, "I did it." Defendant then stated that he "didn't do it" and that he did not want to answer any more questions. Detective Freitag prepared a supplemental report summarizing his investigation and conversation with the defendant.

¶ 10    The State rested its case-in-chief. The defense moved for a directed verdict. Defendant's motion for directed verdict was granted as to the Class 1 aggravated robbery charge on the basis that the "[d]efendant never threatened [Burke] with a weapon" and the "complaining witness testified that he didn't see a weapon." The court denied the motion as to Class 2 robbery.

¶ 11    The defense called Chicago Police Officer H. Dixon, who testified to arresting defendant on January 17, 2017, at approximately 12:58 p.m. In the police report, Officer Dixon indicated that

defendant had a tattoo above his right eye that said "Kenya," two tattoos on his right hand, and a tattoo on his left hand that said "dad." The officer could not recall whether he noted any facial tattoos on defendant or whether defendant pointed them out.

¶ 12    The defense rested its case-in-chief. Following argument, the trial court found defendant guilty of robbery. Defendant moved for a new trial, arguing that the evidence failed to prove that he threatened the imminent use of force. The court denied the motion, reasoning that the "act of walking up and asking whether the [victim] was a member of an opposing gang and then demanding that the [victim] turn over everything he had is sufficient force to justify a robbery conviction." But the court "didn't believe that there was sufficient evidence in the record to establish that the defendant motioned in a manner suggesting that he had a gun." The trial court sentenced defendant to three years' imprisonment in the Illinois Department of Corrections. The notice of appeal was timely filed.

¶ 13                                    ANALYSIS

¶ 14    Defendant argues that this court should reverse his robbery conviction because the State failed to prove beyond a reasonable doubt that he took the property of Frederick Burke and threatened the imminent use of force in doing so. Specifically, he contends that the record was devoid of evidence of force or a threat of imminent force, as the evidence credited by the trial court indicated only that he successfully directed Burke to "give me everything you got."

¶ 15    Due process requires the State to prove every element of a charge beyond reasonable doubt, as well as every material and essential fact constituting a charge. U.S. Const. amend. XIV; Ill. Const. art. I, § 2; *People v. Weinstein*, 35 Ill. 2d 467, 470 (1996). When a defendant appeals the sufficiency of the evidence supporting his conviction, the relevant question is whether, after viewing evidence in the light most favorable to the People, any rational trier of fact could have found the elements of the crime beyond reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985).

¶ 16    In a bench trial, it is for the trial judge, sitting as the trier of fact, to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any

conflicts of evidence. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). A reviewing court does not retry the defendant. *People v. Evans*, 209 Ill. 2d 194, 209 (2004). It will not substitute its judgment for that of the trier of fact simply because the evidence is conflicting. *Siguenza-Brito*, 235 Ill. 2d at 224-25, 228. We will reverse a conviction only if the defendant establishes on appeal that " "the evidence is so unreasonable improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Rowell*, 229 Ill. 2d 82, 98 (2008).

¶ 17    A person commits robbery when he "knowingly takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2016). If the imminent use of force is threatened, then the actual use of force is not required. *People v. Taylor*, 129 Ill. 2d 80, 84 (1989). Thus, the State must prove that he took money from the presence or person of Burke and used or threatened the imminent use of force.

¶ 18    When a defendant does not employ actual force, the State must submit articulable facts that establish that the defendant made a threat of imminent force. *People v. Hollingsworth*, 120 Ill. App. 3d 177, 178-79 (1983). A taking by the use of force or threat of force is proven when the fear of the victim was of such a nature that reason and common experience would induce a person to part with his or her property for the sake of his person. *People v. Cooksey*, 309 Ill. App. 3d 839, 849 (1999). A victim's subjective feeling of fear will not support a robbery conviction; the test is an objective one, whether the victim's fear was reasonable. *People v. Grengler*, 247 Ill. App. 3d 1012, 1012 (1993). Thus, if a defendant merely instructs a person to transfer money and does not act in a way that would reasonably allow the victim to conclude that he was threatening force, the defendant's actions do not constitute robbery. *Hollingsworth*, 120 Ill. App. 3d at 179.

¶ 19    Here, however, the trier of fact could have rationally concluded that defendant threatened force in taking Burke's money. For one thing, Burke testified that he handed over his money out of fear; while subjective fear alone is not dispositive (*Grengler*, 247 Ill. App. 3d at 1012), it is certainly a relevant factor. More importantly, defendant's conduct throughout the encounter was hostile and

intimidating. When he first confronted Burke, defendant asked if Burke was from the neighborhood and a member of a rival gang—not friendly, welcoming questions. After Burke gave him what would have been seemingly satisfactory responses, defendant followed Burke and ultimately stood very close to him, though they were strangers. What's more, he didn't ask for Burke's money—he demanded it, saying, "Matter of fact, give me everything you got out of your pocket." The evidence established that Burke quickly handed over all of his money, from every pocket, out of fear of the consequences if he failed to comply with the demand; it was by no means a voluntary act of charity. A rational fact finder could have rationally determined that all of these facts were proven, and that Burke's fear of imminent force was reasonable. The evidence was thus sufficient to support the conviction.

¶ 20    True, the court found that no weapon, or even the threat of one, was involved, which is why it directed out the charge of aggravated robbery. But the absence of a weapon or the threat of one does not preclude a finding of guilt on *simple* robbery.

¶ 21                                    CONCLUSION

¶ 22    For the reasons given above, we affirm defendant's conviction.

¶ 23    Affirmed.