2021 IL App (1st) 191693-U

No. 1-19-1693

Order filed May 19, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 12832 |
| | ) | |
| DA'QUWON PICKETT-HARTGROVE, | ) | Honorable |
| | ) | Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Howse and Justice Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's conviction for aggravated unlawful use of a weapon affirmed where the police officer's credible testimony was sufficient to prove defendant guilty beyond a reasonable doubt.

¶ 2   Following a bench trial, defendant Da'Quwon Pickett-Hartgrove was convicted of aggravated unlawful use of a weapon (AUUW) for possessing a handgun (720 ILCS 5/24-1.6(a)(1) (West 2018)) and sentenced to two years' imprisonment. On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt because the police officer's testimony was

not credible where it was impeached by the officer's arrest report, not corroborated by the officer's body camera video, and where neither the gun nor any physical evidence connecting defendant to the gun was introduced at trial. We affirm.

¶ 3    Defendant was tried on four counts of AUUW for possessing a handgun when not on his own land and when he had not been issued a valid firearm owner's identification (FOID) card or concealed carry license. At trial, Chicago police officer Joseph Cunningham testified that about 1:44 a.m. on August 18, 2018, he was on patrol with his partner, Officer Matthew Patruno, in an unmarked police vehicle traveling northbound on Pulaski Road. Patruno was driving and Cunningham was in the passenger's seat. Other police officers were following behind them in marked police vehicles. As they approached the intersection with Lake Street, Cunningham observed four men walking westbound on the south side of Lake Street, approaching Pulaski. Cunningham observed one of the men, defendant, adjusting a large bulge in the front of his waistband. Defendant was about 10 to 15 feet from Cunningham, and the artificial lighting in the area was very bright. Cunningham identified defendant in court.

¶ 4    Cunningham exited his vehicle, announced his office, and asked defendant to come to him. Defendant grabbed the front of his waistband and ran. Cunningham shouted, "stop, police," and ran after defendant. Defendant ran south, crossed Pulaski, then ran westbound into the south alley of Lake Street. Defendant continued holding the front of his waistband with his right hand as he ran through the alley. Cunningham followed defendant. On the south side of the alley was a vacant lot. A minivan was parked in the vacant lot in the 4000 block of West Maypole Avenue. Cunningham observed defendant remove a silver handgun from the front of his waistband and throw it underneath the minivan. Cunningham heard a metal object striking gravel and sliding.

Cunningham continued chasing defendant. Defendant ran into a yard on Maypole where he was detained by assisting officers.

¶ 5    After defendant was detained, Cunningham returned to the area in the vacant lot where he saw defendant throw the gun and notified the assisting officers of his observation. Cunningham directed Officer Collazo[1] to the location of the gun and observed Collazo retrieve the handgun from underneath the minivan. Collazo handed the gun to Patruno. Patruno removed the magazine from the loaded gun and ejected a live round from the slide in the chamber. Cunningham recognized the .40-caliber Smith and Wesson handgun as the same gun he observed defendant toss underneath the minivan. Cunningham remained with Patruno while he kept the gun in his custody and observed Patruno inventory the gun at the police station in accordance with police procedure.

¶ 6    Cunningham confirmed that his body camera was affixed to the front of his vest on the day of the offense and he activated it during his foot pursuit of defendant. He testified that the video from his body camera truly and accurately depicted the events as he observed them during the offense. As the video played in court, Cunningham explained that he was sitting in the front passenger seat of the police vehicle as it headed northbound on Pulaski approaching Lake. The police vehicle stopped at the southeast corner of Pulaski and Lake, and Cunningham exited the vehicle. Cunningham identified defendant on the video as the second person from the left. As the video continued playing, Cunningham confirmed it depicted him and other officers entering the alley south of Lake Street. He indicated the point where he turned and ran southbound through the vacant lot in the 4000 block of Maypole. Cunningham identified a "blur" on the left-hand corner of the video as the minivan he observed defendant toss the handgun under and where the gun was

_____

[1] Officer Collazo's first name does not appear in the record.

subsequently recovered. The prosecutor stopped the video at the point where Cunningham emerged from the vacant lot onto Maypole.

¶ 7 On cross-examination, Cunningham testified that his police vehicle was moving very slowly when he observed defendant and the three men walking on the sidewalk. Cunningham acknowledged that when he first saw defendant, he did not observe defendant committing a crime. No one had reported a man with a gun in that location. When Cunningham observed the bulge on defendant, he did not see the gun or the butt of the gun. Defendant was clutching the front of his waistband. Cunningham denied defendant was holding up his pants. After Cunningham exited his vehicle, the four men on the sidewalk ran. Cunningham did not observe the gun at that point. A man wearing a red jacket ran in the same direction as defendant. Cunningham could not recall the exact route taken by the man in the red jacket. Cunningham observed Collazo and Patruno go underneath the minivan to retrieve the gun. Collazo was the first officer to touch the weapon.

¶ 8 Cunningham acknowledged his arrest report stated that he observed defendant remove "an object" from his front waistband with his right hand and toss it beneath an unoccupied minivan in the middle of the vacant lot. The arrest report did not specifically mention a "gun." Nor did his arrest report state that he heard a metal object hitting the ground after the object was thrown. Cunningham explained that the arrest report is generally "a summary of probable cause" whereas the case report is a more descriptive and fully encompassing summary of the events. Defendant never made a statement that he had a gun.

¶ 9 The State presented a stipulation that on the date of the offense defendant did not have a validly issued FOID card or concealed carry license.

¶ 10    This court viewed the video from Cunningham's body camera that was admitted into evidence at the end of the State's case. The video begins with Cunningham seated in the front passenger seat of the police vehicle as it approaches a red light at Lake Street. The vehicle stops at the red light, turns slightly to the right under the el tracks, and stops on the corner. At this point, the video shows only the inside of the police vehicle, the top of a building on the corner, and the underside of the elevated train tracks. The camera did not record looking forward through the windshield or out the side passenger window. Any people, cars, or activity on the street or sidewalk at this time are not visible on the video. Cunningham exits his vehicle. The video depicts four men walking around the corner from Lake Street onto Pulaski. Cunningham identified defendant as the second man from the left. Defendant is wearing blue jeans and a blue hooded sweatshirt with white graphics. As Cunningham approaches, the four men run across Pulaski. Multiple police officers chase the men. Cunningham and another officer enter and run through an alley. At this point, it is difficult to decipher details on the video because it is constantly shaking and bouncing as Cunningham runs through the alley. Cunningham runs past a parked minivan as he enters a vacant lot on the left side of the alley. Cunningham runs through the vacant lot and emerges onto a sidewalk. At this point the prosecutor stopped the video. The length of the video is 50 seconds.

¶ 11    In a motion for a directed finding, defendant argued that Cunningham's testimony that he observed defendant throw a silver handgun was impeached by his arrest report wherein Cunningham stated that he observed "an object" being thrown. Defendant also argued that Cunningham's testimony that he heard a metal object hit the ground was impeached by the fact that information was not included in his arrest report. Defendant further argued that the video from Cunningham's body camera did not show defendant with a weapon, or a weapon being thrown or

recovered. Defendant claimed no evidence connected him to the recovered weapon. The trial court denied defendant's motion.

¶ 12    The trial court found defendant guilty of four counts of AUUW. The court merged all the counts into count III, which charged defendant with possessing a handgun that was uncased, loaded, and immediately accessible when he was not on his own land and had not been issued a currently valid concealed carry license.

¶ 13    In his posttrial motion, defendant again argued that Cunningham's testimony was not credible and was impeached by his arrest report which did not specify that the officer observed defendant throw a gun, or that the officer heard a metal object hitting the ground. The trial court denied defendant's motion. The court sentenced defendant to two years' imprisonment.

¶ 14    On appeal, defendant contends the State failed to prove him guilty beyond a reasonable doubt because Cunningham's testimony was not credible. Defendant maintains that Cunningham's testimony that he observed defendant throw a gun under the minivan was impeached by the omissions in his arrest report. Defendant also claims the video did not corroborate Cunningham's testimony because it shows Cunningham's view was obstructed when defendant and the man in the red jacket ran past the minivan, which is not depicted on the video. In addition, defendant argues that the State did not admit the gun into evidence or present any physical evidence connecting him to the gun.

¶ 15    When defendant claims the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19

(1979)). This standard applies whether the evidence is direct or circumstantial, and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 16    In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences from therein. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). In weighing the evidence, the fact finder is not required to disregard the inferences that naturally flow from that evidence, nor must it search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *Jackson*, 232 Ill. 2d at 281. We will not reverse a criminal conviction based upon insufficient evidence unless the evidence is so improbable or unsatisfactory that there is reasonable doubt as to defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 17    To prove defendant guilty of AUUW as charged in this case, the State was required to show that, while not on his own land or in his abode or dwelling, or an invitee on another person's land or in their dwelling, he knowingly carried on his person a handgun that was uncased, loaded, and immediately accessible, and at the time of the offense he had not been issued a currently valid concealed carry license. 720 ILCS 5/24-1.6(a)(1)/(3)(A-5) (West 2018).

¶ 18    "Proof of physical evidence connecting a defendant to a crime has never been required to establish guilt." *People v. Williams*, 182 Ill. 2d 171, 192 (1998). The testimony of a single witness is sufficient to sustain a conviction where it is positive and credible, even when it is contradicted by defendant. *People v. Gray*, 2017 IL 120958, ¶ 36. Where a guilty finding depends on eyewitness

testimony, the reviewing court must determine if a factfinder could reasonably accept the testimony as true beyond a reasonable doubt. *Id.* "Under this standard, the eyewitness testimony may be found insufficient 'only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt.' " *Id.* (quoting *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)). A conviction will not be reversed simply because the evidence is contradictory, or defendant claims a witness was not credible. *Id.*

¶ 19     Here, viewed in the light most favorable to the State, the record shows that the evidence was sufficient for the trial court to find defendant guilty beyond a reasonable doubt of AUUW. Cunningham testified that he observed defendant walking on Lake Street and adjusting a large bulge in the front of his waistband. When Cunningham exited his vehicle and approached defendant, defendant grabbed the front of his waistband and ran. As Cunningham chased defendant through an alley, defendant continued holding the front of his waistband with his right hand. As defendant ran past a parked minivan in a vacant lot, Cunningham observed defendant remove a silver handgun from the front of his waistband and throw it underneath the minivan. Cunningham heard a metal object striking gravel and sliding. After defendant was detained in a nearby yard, Cunningham returned to the vacant lot, directed Collazo to the location of the gun, and observed Collazo retrieve the handgun from underneath the minivan. Cunningham then observed Patruno remove the magazine from the loaded gun and eject a live round from the chamber. Cunningham testified that he recognized the .40-caliber Smith and Wesson handgun as the same gun he observed defendant toss underneath the minivan. Cunningham's testimony was corroborated by the video from his body camera which shows defendant walking on Lake Street, then running across Pulaski when approached by Cunningham. The video further shows Cunningham chasing defendant

through the alley and vacant lot, passing the minivan parked in the lot. The trial court found that the evidence proved defendant guilty beyond a reasonable doubt of AUUW. Based on this record, we find no reason to disturb the trial court's judgment.

¶ 20    In reaching this conclusion, we find no merit in defendant's argument that Cunningham's testimony was not credible because it was impeached by the omissions in his arrest report. Defendant maintains that the inconsistency between Cunningham's testimony and his arrest report, wherein Cunningham stated that he observed defendant throw "an object" without specifying it was a gun and did not mention he heard metal hitting the ground, shows that Cunningham added these details later and raised doubt as to whether he observed defendant with the gun. The record shows that when confronted with the omissions at trial, Cunningham testified that the arrest report is generally "a summary of probable cause" whereas the case report is a more descriptive and fully encompassing summary of the events. The record further shows that defendant raised these same impeachment arguments in his motion for a directed finding and his posttrial motion. The trial court considered these arguments and found them unpersuasive. Sitting as the trier of fact, it was the trial court's responsibility to determine the credibility of Cunningham's testimony. *Siguenza-Brito*, 235 Ill. 2d at 228. Our review of the record does not compel the conclusion that no reasonable person could accept Cunningham's testimony beyond a reasonable doubt. *Gray*, 2017 IL 120958, ¶ 36. Consequently, we will not disturb the trial court's credibility finding.

¶ 21    Similarly, we find no merit in defendant's argument that the video did not corroborate Cunningham's testimony because it shows Cunningham's view was obstructed when defendant and the man in the red jacket ran past the minivan. While watching the video in court, Cunningham identified a "blur" on the left-hand corner of the video as the minivan he observed defendant toss

the handgun under and where the gun was subsequently recovered. Defendant admits the video is "shaky." This court viewed the video and found that while Cunningham is chasing defendant through the alley and vacant lot, it is very difficult to decipher any details on the video because it is constantly shaking and bouncing as Cunningham is running. The body camera was affixed to Cunningham's vest. Logically, the camera did not capture the same view as Cunningham observed with his eyes. The video corroborated Cunningham's testimony regarding his observation of defendant walking on the sidewalk when Cunningham exited his vehicle, defendant fleeing from Cunningham, and Cunningham's foot pursuit of defendant through the alley and vacant lot. The video does not establish that Cunningham's view was obstructed.

¶ 22    Finally, defendant's assertion that the State failed to prove him guilty because it did not introduce the gun or any physical evidence connecting him to the gun is unpersuasive. It is well-settled that physical evidence is not needed to establish guilt (*Williams*, 182 Ill. 2d at 192), and the credible testimony of a single witness is sufficient to sustain a conviction (*Gray*, 2017 IL 120958, ¶ 36). Here, Cunningham's credible testimony that he observed defendant toss the handgun under the minivan and that the officers recovered the loaded gun from beneath the minivan moments later was sufficient to prove defendant guilty of AUUW beyond a reasonable doubt.

¶ 23    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 24    Affirmed.