2022 IL App (1st) 180607-U

No. 1-18-0607

Order filed December 8, 2022

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 DV 81297 |
| | ) | |
| ANTHONY PATTERSON, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Lampkin and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's conviction for domestic battery over his contention that the State failed to prove him guilty beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Anthony Patterson was found guilty of misdemeanor domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)) and sentenced to 18 months' conditional discharge. On appeal, Patterson contends he was not proven guilty beyond a reasonable doubt because the State did not present physical evidence and the complaining witness was not credible.

For the following reasons, we affirm. [1]

¶ 3                              I. BACKGROUND

¶ 4    Patterson was charged by complaint with one count of domestic battery against Asli Baz, with whom he had a child, arising from an incident on November 24, 2017.[2] His trial commenced on March 2, 2018.

¶ 5    Baz testified that she and Patterson owned and resided in a three-story house on the 6600 block of South Wabash Avenue and managed an Airbnb business together. On June 5, 2017, Baz filed a petition in domestic relations court seeking "sole allocation of significant decision-making, responsibilities, and majority of parenting time" for their shared child. On July 17, 2017, the judge entered an agreed order regarding parenting time, contact between Baz and Patterson, and management of Patterson and Baz's business. Pursuant to the order, Baz resided on the first and second floors exclusively, and Patterson resided in the basement. Since the basement lacked a kitchen, Patterson could use the kitchen on the first floor during "parenting times" determined by the court.

¶ 6    On November 24, 2017, at approximately 11:30 a.m., Baz investigated a sound in the house and observed Patterson in the kitchen removing the door to the patio. Baz asked Patterson to leave the house, but he seemed "tense" and ignored her. Baz then asked Patterson what he was doing, but he "kept coming" toward her. Baz was afraid and did not know whether Patterson intended to harm her, so she "pepper-sprayed" him and called the police. Two officers arrived. Baz spoke with them in the house; then, the officers went outside to finish the report.

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2]The victim's surname is spelled both as Baz and Bas throughout the record on appeal. We adopt the spelling from the complaint.

¶ 7 While Baz waited for the officers to return, she observed Patterson remove the front porch security camera. Patterson then spoke to Baz, who recorded him on her phone "just in case" he denied verbally harassing and abusing her. Patterson said, "You think it is funny, you pepper-sprayed me," and, "[t]ake your stupid a** back in the house, I know you are recording." He also told Baz, "[j]ust know, be prepared," which he repeated "in a singing voice."

¶ 8 After the police left, Baz went upstairs to the nursery and called her mother. As she spoke with her mother, she heard a sound in the room and turned to observe Patterson standing over the crib. Baz asked Patterson what he was doing, and he "flung at [her] trying to grab [her] or punch [her]." Patterson "got" her arm and threw her to the ground while she held the phone, with her mother still on the line. Patterson then placed Baz in a chokehold, and Baz was unable to move. Baz demonstrated the motion, which the State described as "put[ting] her arm around her neck." Patterson said, "B***, I am going to kill you both, you are the reason why we are selling this house," and, "I am not going to let you sell this house." Baz was "terrified" and "in pain," but held onto her phone despite Patterson's attempts to take it from her. Patterson kicked Baz's purse on the floor, spilling the contents. Then, "all of a sudden," he let go of Baz and ran to the basement.

¶ 9 Baz called the police, who returned to the house "[i]mmediately." Baz was "crying," "frazzled," and "in shock." She observed police officers arrest Patterson.

¶ 10 On cross-examination, Baz stated that she and Patterson had been in a relationship for approximately 3½ years and their baby was born on May 10, 2017. Patterson filed a petition in chancery court on September 8, 2017, to force the sale of the property, which was pending at the time of trial. Baz filed her answer on September 22, 2017, objecting to the sale because the property was her and the baby's permanent residence.

¶ 11    When the police arrived on November 24, 2017, Baz informed them that she had pepper-sprayed Patterson. He refused medical attention. When the officers left, Baz waited "[m]aybe a minute," before going upstairs to the nursery, and was there for a minute or two before Patterson entered. On November 27, 2017, Baz filed a petition for an order of protection, wherein she averred that during the incident, she was "about to call" her mother. Baz denied telling the responding police officer that Patterson choked her "with his hands" and affirmed that she said she was placed in a chokehold.

¶ 12    The court inquired regarding Baz's audio recording of Patterson. The State published the audio recording during Baz's redirect examination. This recording is part of the record on appeal and has been reviewed by this court.

¶ 13    In the recording, Patterson tells Baz to return to the house and that "everybody" knows she is recording. Patterson laughs at Baz and says, "that's funny." Patterson then calls to the police officers and says, "Yo, yo, what is she doing. What." Patterson says, "just be prepared," then sings the same phrase.

¶ 14    On redirect, Baz testified that when Patterson called to the police officers and told Baz to be prepared, the officers were in their vehicle writing a report. Baz did not remember signing the complaint and did not recognize the document other than her signature, explaining that the day was "very traumatic." Further, although Baz did not originally intend to sell her home, she believed the chancery court made "a good decision."

¶ 15    Chicago police officer Darrick Williams testified that he responded to Baz's home on November 24, 2017, at approximately 11:40 a.m. Patterson and Baz were in the living room. Williams informed Patterson that he violated the civil order addressing their living arrangements. Specifically, Patterson was supposed to remain in the basement and use the kitchen on the middle

level only if Baz was not present. Williams returned to his vehicle, which was parked a couple of blocks from the house, to write a report. After Baz called police officers stating that she had been choked, Williams returned to the house and saw Patterson placing belongings into a vehicle. Williams spoke with Baz, who was crying, and subsequently arrested Patterson.

¶ 16    On cross-examination, Williams stated that he initially spoke with Patterson outside the house regarding the civil order. When Williams left to return to his vehicle, Patterson remained outside the residence. Williams was in his vehicle "maybe 15 or 20 minutes" before he received the second call. Baz did not have noticeable injuries and refused medical attention.

¶ 17    The State rested, and Patterson recalled Williams.

¶ 18    Williams testified that when he returned to the house, Baz informed him that she was upstairs when Patterson "grabbed her" and "choked her." Williams did not recall whether Baz specified that Patterson choked her with his hands. Williams wrote in his report, however, that Patterson choked Baz with his hands.

¶ 19    On cross-examination, Williams agreed that he understood the word "choked" to mean that "someone has placed their hands and applied pressure on [another's] neck." Williams agreed that a person can be choked by having an arm placed around his or her neck. Williams did not ask Baz to demonstrate how she had been choked.

¶ 20    In closing, defense counsel argued that Baz was not credible as she admitted that she and Patterson were involved in a contentious domestic relations case with "a lot of animosity." Further, Baz's testimony was incredible since the events occurred in quick succession after Williams's departure from the house, and Baz had no visible marks or injuries. Additionally, counsel contended that Baz was impeached by (1) Williams's report asserting that Baz informed Williams that Patterson used his hands to choke her; (2) evidence that Patterson initiated the action in

chancery court to force the sale of the house, in contradiction to Baz's testimony that Patterson stated that she was the reason that they were selling the house and he was "not going to let [her] sell this house"; and (3) the inconsistencies regarding whether Baz was already on the phone with her mother when the attack occurred.

¶ 21    The court found Patterson guilty of domestic battery. In ruling, the court commented that Patterson and Baz had a great deal of animus over many issues, which the defense argued was a motive for Baz to make the allegations. The court stated, however, that the animosity could also explain Patterson's actions. The court found Baz credible and determined that she testified calmly. Further, the court found that the audio recording was "very telling," corroborating Baz's testimony. Lastly, the court determined that Baz's lack of injury was not grounds to impeach her, as injuries would not necessarily result from being pushed to the ground and put in a chokehold.

¶ 22    After a hearing held *instanter*, the court sentenced Patterson to 18 months of conditional discharge, with a scheduled termination date of August 30, 2019.

¶ 23    On March 9, 2018, Patterson filed a *pro se* notice of appeal and "Motion for Retrial," which alleged ineffective assistance of counsel. Following a hearing on March 7, 2019, the court determined that counsel was not ineffective and denied Patterson's motion. That same day, the court terminated Patterson's conditional discharge early because he had completed the required domestic violence classes.

¶ 24    On November 18, 2021, the Illinois Supreme Court entered a supervisory order directing this court to treat the March 9, 2018, notice of appeal as a properly perfected appeal from the trial court's March 7, 2019 judgment.

¶ 25                                    II. ANALYSIS

¶ 26 On appeal, Patterson argues that Baz was not credible and that no physical evidence supported her claims; thus, the evidence was insufficient to convict him of domestic battery.

¶ 27 The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (citing *People v. Cooper*, 194 Ill. 2d 419, 431 (2000)). The trier of fact resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. Accordingly, this court will not substitute its judgment for that of the trier of fact on the weight of the evidence or the credibility of witnesses. *Id*. A reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 28 To sustain Patterson's conviction for domestic battery as charged, the State had to prove beyond a reasonable doubt that he knowingly and without legal justification made physical contact of an insulting or provoking nature with any family or household member. 720 ILCS 5/12-3.2(a)(2) (West 2016). Patterson challenges the State's evidence that he made physical contact with Baz.

¶ 29 Viewing the evidence in the light most favorable to the State and allowing all reasonable inferences in favor of the State, a rational trier of fact could find beyond a reasonable doubt that Patterson battered Baz. The State presented evidence that Patterson and Baz, the mother of his

child, had a contentious relationship, which required a court order to divide their shared home into separate living areas. On November 24, 2017, Baz saw Patterson on the first floor, in an area where he was not allowed, pepper-sprayed him, and called the police. She testified Patterson threatened her, and, later, placed her in a chokehold and pushed her to the ground. Baz's testimony alone is sufficient to convict. See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009) ("[T]he testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant."). Further, the State introduced an audio recording of Patterson telling Baz to "be prepared" moments before the attack and Williams testified that Baz was crying when he returned to the home. This evidence was sufficient to prove Patterson guilty of domestic battery beyond a reasonable doubt.

¶ 30    Patterson nevertheless argues that the State did not present sufficient evidence that he committed the battery. He argues that Baz was not credible because their antagonistic relationship and ongoing domestic relations case motivated her to lie. Patterson particularly challenges Baz's trial testimony that she was speaking with her mother during the attack, since she previously averred that she was preparing to place the call. Patterson further contends that Baz testified incredibly that Patterson stated that Baz wanted to sell their house, where Patterson, not Baz, filed a petition in chancery court to force a sale. Patterson argues that it was contrary to human experience that he would attack Baz knowing that officers were nearby and would return soon with a report, and that Baz did not mention Patterson's alleged threats to Williams when she signed the report.

¶ 31    Patterson's contentions are essentially a request for this court to reweigh the evidence, resolve conflicts in the testimony, and determine the credibility of the witnesses. As the reviewing court, we cannot do so. See *Brown*, 2013 IL 114196, ¶ 48. The trial court heard the same arguments

in Patterson's closing and found Baz credible. In particular, the court commented upon her demeanor and found that the recording of Patterson telling her to "just be prepared" corroborated her testimony. We find no reason to disturb the trial court's judgment.

¶ 32    Although Patterson contends that the flaws in Baz's testimony render her version of events to be improbable, unconvincing, and "contrary to human experience," we disagree.

¶ 33    First, Baz's inconsistent statements regarding whether she was speaking on the phone with her mother when Patterson attacked her do not mandate a different result. The "trier of fact is free to accept or reject as much or as little of a witness's testimony as it pleases." (Internal quotation marks omitted.) *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67. The court could have found these inconsistencies to be inconsequential as to whether the other events occurred.

¶ 34    Second, Baz's testimony that Patterson stated that she was "the reason" they were selling the house is not necessarily inconsistent with her other testimony regarding the cause of the sale. Although Baz testified that she initially objected to the sale, Baz also stated that she believed the chancery court arrived at "a good decision." "[T]he trier of fact is not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt." *Siguenza-Brito*, 235 Ill. 2d at 229. Here, Patterson's statements that Baz was "the reason" they were selling the house and he would not "let her sell" the house could have various meanings, including that Patterson blamed Baz for the problems in their relationship and his need to file an action to force the sale of the house. Thus, any purported inconsistencies in Baz's testimony regarding the origin of the chancery proceeding do not establish that her testimony as a whole was not credible.

¶ 35    Lastly, Baz's testimony that Patterson choked her while the police officers were still nearby and Baz's failure to tell Williams about Patterson's threats are not contrary to human experience,

as Patterson claims. The State presented evidence that Patterson and Baz were involved in multiple contentious court proceedings. Baz admitted to pepper-spraying Patterson before she called the police, and testified that, while the police were in their vehicle nearby, Patterson told her to "just be prepared." It is a reasonable inference that Patterson was angry at Baz and attacked her without regard to whether the police officers were nearby. See *Cunningham*, 212 Ill. 2d at 280. Further, Williams testified that Baz was crying when he returned to the house, and Baz testified that she was "crying," "frazzled," and "in shock" after the attack. Given that Baz was upset, it is reasonable that she did not inform the police of every detail of the attack and could recount it more fully when calmer. The court observed Baz's demeanor and found her credible. We find no reason to disturb that determination.

¶ 36    Patterson contends that the trial court took Baz's recording of him—wherein he told Baz to "just be prepared"—out of context, as he likely meant that she should "be prepared" for him to use the fact that she pepper-sprayed him against her in court. An equally plausible interpretation, however, is that Patterson was threatening her. Again, we are not required to accept "any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt." *Siguenza-Brito*, 235 Ill. 2d at 229. The trial court could reasonably find this evidence corroborated Baz's testimony that Patterson attacked her minutes after making that statement. The evidence was not "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *Jackson*, 232 Ill. 2d at 281.

¶ 37                                    III. CONCLUSION

¶ 38    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.