2025 IL App (2d) 240223-U
No. 2-24-0223
Order filed March 21, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CF-2065 |
| LEWIS RICHARDSON, | ) ) ) | Honorable Elizabeth K. Flood, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We agree with appellate counsel that there is no arguably meritorious basis for appeal. Therefore, we allow counsel to withdraw, and we affirm the trial court.

¶ 2    Following a bench trial in the circuit court of Kane County, defendant, Lewis Richardson, was convicted of two counts each of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004); 720 ILCS 5/11-1.40(a)(1) (West 2016)) and aggravated criminal sexual abuse (720 ILCS 5/12-16(b) (West 2004); 720 ILCS 5/11-1.60(b) (West 2016)). Defendant filed a timely notice of appeal. The Office of the State Appellate Defender (OSAD) was appointed to

represent defendant on appeal but now moves to withdraw, claiming there is no arguably meritorious basis for appellate relief. We grant the motion and affirm.

¶ 3                                    I. BACKGROUND

¶ 4     A ten-count indictment charged defendant with offenses against sisters T.K. (counts I through III) and D.W. (counts IV through X). The State also filed a bill of particulars, which it later amended. The State elected to proceed first on the counts involving D.W. Those counts alleged conduct occurring at homes on Locust Street, Galena Boulevard, and Park Vista Lane, all in Aurora.

¶ 5     Before trial, the State moved *in limine* under section 115-7.3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-7.3 (West 2020)) to admit evidence of sex offenses by defendant against D.W. at defendant's home on Georgetown Circle in Aurora. The trial court granted the motion over defendant's objection. In a separate motion *in limine* under section 115-7.3, the State sought to admit evidence of the sex offenses against T.K. charged in counts I through III. Again, the court granted the motion over defendant's objection.

¶ 6     At trial, Jennifer Ross testified that, in October 2018, she was employed as a social worker at East Aurora High School. On October 16, 2018, D.W., a student at the school, was brought to Ross's office. D.W. told Ross that she had been sexually abused by defendant. Ross reported the accusation to the Department of Children and Family Services and the school resource officer.

¶ 7     D.W. testified that she was born on June 25, 2002. Defendant was married to D.W.'s maternal grandmother, S.R. Although defendant was D.W.'s step-grandfather, he had been in her life for as long as she could remember, and she "consider[ed] him to be a grandfather to [her]." At one point, defendant and S.R. lived in a house on Locust Street with two of S.R.'s children. D.W. recalled visiting the house when she was between the ages of three and five. D.W. testified that,

during some of those visits, defendant took her into the bedroom he shared with S.R. and massaged or caressed her vagina through her clothes.

¶ 8     At some point, defendant and S.R. moved to a house on Galena Boulevard. One of S.R.'s daughters lived with them there. D.W. visited the house between the ages of six and eight. On more than one occasion during that period, defendant touched her vagina under her clothes in his and S.R.'s bedroom. D.W. testified that defendant's fingers were inside or between the lips of her vagina.

¶ 9     When D.W. was between 8 and 10 years old, defendant and S.R. lived in the "Georgetown [n]eighborhood" in Aurora. During D.W.'s visits to this home, defendant touched her vagina under her clothes. Defendant and S.R. later moved to a house on Park Vista Lane, where they lived with S.R.'s oldest daughter and three foster children. When D.W. was between 11 and 14, she initially spent summers at the house and later lived there. D.W. testified that her body "began to develop more so that gave [defendant] the opportunity to touch [her] body a little bit more than what he did when [she] was younger." Beginning when D.W. was 12, defendant would touch and place his mouth on her breasts and put his fingers between the lips of her vagina. Defendant undressed D.W. before touching her in this manner. The abuse occurred in defendant's bedroom. The abuse stopped when D.W. was 14. She disclosed the abuse to a school counselor in 2018. At that time, she was in trouble for a cyberbullying incident, which led defendant and S.R. to cancel her cell phone service.

¶ 10    T.K. testified that she was born on May 31, 2007. She recalled visiting defendant and S.R. at their home on Park Vista Lane when she was five or six years old. She recalled an occasion during those visits when defendant touched her "butt" with his penis and "tried to stick it in [her]." This occurred in defendant and S.R.'s bedroom. On another occasion, in the living room of the

house, defendant tried to place his penis in T.K.'s "butt." T.K. testified that she called her mother, L.J., who was in Indianapolis, to report the abuse. (It is not entirely clear from T.K.'s testimony whether she made the call after the first or the second incident.) L.J. drove from Indianapolis to pick up T.K. and took her to Indianapolis. T.K. testified that S.R. was asleep when L.J. picked her up.

¶ 11    L.J. testified that she was S.R.'s daughter and D.W.'s and T.K.'s mother. L.J. also had three other children ranging in age from 2 to 18. L.J. recalled that, in the summer of 2015, her children stayed with S.R. and defendant at the Park Vista Lane house while L.J. was working in Indianapolis. One night, L.J. received a phone call from T.K., who said something had happened to her. L.J. drove to Aurora the next day and picked up T.K. and the other children. When she arrived, she spoke with everyone in the household, including her sisters, J.J. and S.A. L.J. conversed with S.R. about L.J.'s children. Defendant was present for the conversation, as were L.J.'s children and her siblings. L.J. testified that she sent a text message to defendant in October 2018. A partial printout of the text message was admitted into evidence. In it, L.J. appears to assert that D.W. and T.K. were not lying about being abused. The text further stated, "Y'all can't cut my phone OFF and my daughter told me that her self [*sic*] y'all wanna be [p]etty well let the games begin[.]"

¶ 12    S.R.'s brother, Ju.J., and three of her daughters, Ly.J., S.A., and J.J., testified for the defense that several family members lived with S.R. and defendant during the relevant time frames. Ju.J. testified that he lived with S.R. and defendant at their various homes throughout their marriage. Ju.J. stopped working outside the home in 2003 but thereafter did extensive housework. He usually slept in the living room. J.J. testified that about 10 family members lived in defendant and S.R.'s home in June 2015. Ly.J. and S.A. recalled that, during June 2015, T.K. initially accused

defendant of touching her inappropriately but later admitted that she had lied. J.J. was made aware of the accusation. All four witnesses denied that L.J. picked her children up from S.R. and defendant's home at the time of that accusation. Ju.J. testified that S.R. and defendant returned L.J.'s children to her that night. Ly.J., S.A., and J.J. testified that S.R. and defendant returned the children to L.J. during a trip to Indianapolis on July 4, 2015. Ly.J., Ju.J., and S.A. testified that L.J.'s reputation in the community for truthfulness was poor.

¶ 13    S.R. testified that, in June 2015, T.K. told her that defendant had touched her on the side of her "butt." When S.R. told T.K. she would take her to the hospital, T.K. said she had lied. S.R. then called L.J. and related her conversation with T.K. L.J. did not come to pick up her children. Rather, S.R. returned the children to L.J. during a trip to Indianapolis on July 4, 2015. In 2018, S.R. received a call from D.W.'s school informing her that D.W. "was being a bully on social media." S.R. punished D.W. by taking away her phone. After doing so, S.R.'s relationship with L.J. deteriorated, and L.J. ceased communicating with S.R. Afterward, D.W. accused defendant of touching her inappropriately.

¶ 14    The trial court determined that T.K. and D.W. were credible and found defendant guilty of counts V and VII (predatory criminal sexual assault of a child) and counts VIII and X (aggravated criminal sexual abuse). As relevant here, the State's amended bill of particulars alleged that defendant "touched inside the lips" of D.W.'s vagina at the house on Galena Boulevard when she was between 3 and 7 years old (count V); "rubbed inside the lips" of D.W.'s vagina at the house on Park Vista Lane when she was between 11 and 14 years old (count VII); "touched D.W.'s vagina over her clothes" at the house on Locust Street when she was between 3 and 7 years old (count VIII); and "placed his mouth on D.W.'s breasts" at the home on Park Vista Lane when she was between 11 and 14 years old (count X).

¶ 15    Following a sentencing hearing, the trial court sentenced defendant to consecutive seven-year prison terms on counts V and VII and concurrent three-year prison terms on counts VIII and X. The concurrent three-year terms would be served consecutively with the consecutive seven-year terms, for an aggregate sentence of 17 years. Defendant appealed without moving to reconsider his sentence. OSAD was appointed to represent him.

¶ 16                                    II. ANALYSIS

¶ 17    Appellate counsel moves to withdraw per *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967). In his motion, counsel states that he read the record and found no issue of arguable merit. Counsel further states that he advised defendant of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts and an argument as to why this appeal presents no issue of arguable merit. We advised defendant that he had 30 days to respond to the motion. That time has passed, and defendant has not responded.

¶ 18    Counsel advises us that he considered raising the following issues in this appeal: (1) whether the evidence was sufficient to sustain the convictions, (2) whether the trial court erred in permitting T.K. to testify about sex offenses that defendant committed against her, (3) whether counts V and VII of the indictment were fatally defective, (4) whether defendant received ineffective assistance from trial counsel, and (5) whether the trial court committed plain error in sentencing. Counsel concludes that none of the issues is arguably meritorious. We agree.

¶ 19    We first consider the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence in a criminal proceeding, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S.

307, 319 (1979)). Generally, "a reviewing court will not substitute its judgment for that of the trier of fact on issues involving the weight of evidence or the credibility of witnesses." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009). The testimony of a single witness is sufficient to convict where the testimony is positive and credible, even if contradicted by the defendant. *People v. Adams*, 2023 IL App (2d) 220061, ¶ 97.

¶ 20    Each count of predatory criminal sexual assault of child required proof that (1) defendant was 17 years of age or older, (2) D.W. was under 13 years of age, and (3) defendant committed an act of "sexual penetration" with D.W. See 720 ILCS 5/12-14.1(a)(1) (West 2004); 720 ILCS 5/11-1.40(a)(1) (West 2016). " 'Sexual penetration' means *** any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person." 720 ILCS 5/12-12(f) (West 2004); 720 ILCS 5/11-0.1 (West 2016). "Illinois courts have concluded that the female sex organ includes the vagina as well as the labia majora and labia minora, the outer and inner folds of skin of the external genital organs." *People v. Gonzalez*, 2019 IL App (1st) 152760, ¶ 44. Here, the evidence establishes that, at all relevant times, defendant was over 17 and D.W. was under 13. A.W. testified that defendant committed separate acts of penetration by placing his fingers between the lips of her vagina at both the Galena Boulevard house and the Park Vista Lane house.

¶ 21    Each count of aggravated criminal sexual abuse required proof that (1) defendant was D.W.'s family member, (2) D.W. was under 18, and (3) defendant committed an act of "sexual conduct" with D.W. See 720 ILCS 5/12-16(b) (West 2004); 720 ILCS 5/11-1.60(b) (West 2016). A " '[f]amily member' " includes a step-grandparent. 720 ILCS 5/12-12(c) (West 2004); 720 ILCS 5/11-0.1 (West 2016). At all relevant times, D.W. was under 18 and defendant was her step-grandfather. As pertinent here, " '[s]exual conduct' " means any "knowing touching or fondling

by the *** the accused, either directly or through clothing, of the sex organs, anus, or breast of the victim *** for the purpose of sexual gratification or arousal of the victim or the accused." 720 ILCS 5/12-12(e) (West 2004) ;720 ILCS 5/11-0.1 (West 2016). D.W. testified that defendant touched her vaginal area through her clothing at the Locust Street house and kissed her breasts at the Park Vista Lane house.

¶ 22 The trial court found D.W.'s testimony credible as to the foregoing acts, and the record suggests no grounds for us to disturb that credibility assessment. The court reasonably inferred that defendant touched D.W.'s vagina and breasts for his sexual gratification. Accordingly, we agree with counsel that there is no potentially meritorious basis for challenging the sufficiency of the evidence.

¶ 23 Counsel also contemplated whether to argue that the trial court erred in permitting T.K. to testify about sex offenses that defendant committed against her. Subsection (b) of section 115-7.3 of the Code (725 ILCS 5/115-7.3(b) (West 2020)) provides that, in prosecutions for offenses specified in subsection (a), which include predatory criminal sexual assault of a child and aggravated criminal sexual abuse (see *id.* § 115-7.3(a)(1)), "evidence of the defendant's commission of another offense or offenses set forth in *** subsection (a), *** may be admissible (if that evidence is otherwise admissible under the rules of evidence) and may be considered for its bearing on any matter to which it is relevant." See *Adams*, 2023 IL App (2d) 220061, ¶ 68 (section 115-7.3 "permits the admission of other-crimes evidence in certain cases to show a defendant's propensity to commit specified offenses"). When the State intends to use such evidence, it must disclose it to the defendant (*id.* § 115-7.3(d)). Section 115-7.3(c) (*id.* § 115-7.3(c)) provides a balancing test for admission of such evidence:

"(c) In weighing the probative value of the evidence against undue prejudice to the defendant, the court may consider:

(1) the proximity in time to the charged or predicate offense;

(2) the degree of factual similarity to the charged or predicate offense; or

(3) other relevant facts and circumstances."

¶ 24    T.K.'s testimony was properly disclosed to defendant, and in light of the factors outlined in section 115-7.3(c), there is no potentially meritorious basis for arguing that the trial court erred in concluding that the probative value of T.K.'s testimony outweighed any undue prejudicial impact. As the trial court noted, T.K. and D.W. had the same familial relationship with defendant. Also, both T.K. and D.W. alleged abuse that took place in the bedroom of the Park Vista Lane house. Finally, the incidents occurred in the same general time frame. Accordingly, there is no nonfrivolous basis for challenging the admission of T.K.'s testimony.

¶ 25    Counsel next discusses whether counts V and VII of the indictment were fatally defective because the date range for the alleged conduct extended beyond A.W.'s thirteenth birthday. Defendant did not challenge the sufficiency of the indictment in the trial court. When an indictment is challenged for the first time on appeal, "it is sufficient that the indictment apprised the accused of the precise offense charged with enough specificity to (1) allow preparation of his defense and (2) allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *People v. DiLorenzo*, 169 Ill. 2d 318, 322 (1996). As counsel notes, the defendant in *People v. Libricz*, 2022 IL 127757, ¶¶ 29, 34, argued that the indictment was fatally defective because the date range for the offenses included periods before the effective date of the statute creating the offense. The supreme court rejected the challenge because, "[r]eading the indictment as a whole, [the] defendant was not prejudiced in the preparation of his defense as to the alleged

conduct." *Id.* ¶ 50. The court reasoned that "[t]he charges notified [the defendant] of the alleged acts of sexual penetration, identified the time frame in which those acts were said to have occurred, and alleged the ages of [the] defendant and [the victim] at the time the offenses were committed." *Id.* Also, there had been no "substantive change" in the law; the defendant's conduct was criminalized throughout the date range even though the offense label changed. *Id.* ¶ 56. The defendant was not prejudiced in preparing his defense, which was that the charged acts "never occurred, not that they did not occur in a specific time frame." *Id.* ¶ 51.

¶ 26    Applying *Libricz*, we fail to see how the overly expansive date range could have impaired defendant's ability to prepare a defense. As in *Libricz*, defendant was notified of the nature of the alleged offenses, their time frames and locations, and the ages of defendant and D.W. when the offenses occurred. Defendant's defense at trial was not that he committed the offenses alleged in counts V and VII *after* D.W.'s thirteenth birthday, but that he never committed them. Moreover, the extended date range could not prevent defendant from raising his convictions as a bar to a future prosecution for the conduct giving rise to defendant's convictions here. Accordingly, there is no arguably meritorious basis for challenging the sufficiency of counts V and VII of the indictment.

¶ 27    Counsel next addresses whether defendant was deprived of the effective assistance of counsel. Claims of ineffective assistance of counsel are evaluated under the two-prong *Strickland* test (*Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). *Strickland* requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Counsel

identifies two aspects of trial counsel's performance that "could be criticized," though counsel ultimately concludes that the criticisms would have no potential merit.

¶ 28      First, counsel points out that trial counsel could have argued before trial that counts V and VII were defective because their date range extended beyond D.W.'s thirteenth birthday. We agree with counsel that the State almost certainly would have amended those counts in response to counsel's challenge. Forgoing such a pointless exercise could not have amounted to deficient performance. Moreover, the near certainty that the State would have corrected counts V and VII eliminates any possible prejudice.

¶ 29      Second, counsel points out that trial counsel improperly impeached T.K. with a prior inconsistent statement. Counsel submits that the trial court would have likely sustained an objection if the State had made one. However, counsel notes that the State did not object, and the trial court allowed the impeachment; thus, trial counsel avoided any potential prejudice from an objection.

¶ 30      From our own review of the record, we find no indication that trial counsel's performance was deficient. Thus, we agree with counsel that the record supports no arguably meritorious basis for claiming ineffective assistance of trial counsel.

¶ 31      Finally, we consider whether the trial court committed error in sentencing defendant. As counsel notes, defendant did not move to reconsider his sentence, so any errors would be forfeited and would be reviewable only if they rose to the level of plain error. See *People v. Campos*, 2024 IL App (2d) 230056, ¶ 49. "For a defendant to obtain relief under the plain error doctrine, the defendant must show error and then that either the evidence at the sentencing hearing was closely balanced or the error was so egregious as to deny the defendant a fair sentencing hearing." *Id.*

Counsel submits that there is no nonfrivolous basis for attacking defendant's 17-year aggregate sentence. We agree.

¶ 32    Mandatory consecutive sentencing applied to some of the offenses. Defendant was convicted of two counts of predatory criminal sexual assault of a child, a Class X felony punishable by a prison term of not less than 6 years and not more than 60 years (720 ILCS 5/11-1.40(b)(1) (West 2022)), and aggravated criminal sexual abuse, a Class 2 felony punishable by a prison term of not less than three years and not more than seven years (720 ILCS 5/11-1.60(g) (West 2022); 730 ILCS 5/5-4.5-35(a) (West 2022)). The sentences for aggravated criminal sexual abuse could run concurrently to each other, but the sentences for predatory criminal sexual assault of a child were required to run consecutively both to each other and to the sentences for aggravated criminal sexual abuse. See 730 ILCS 5/5-8-4(a), (d)(2) (West 2022) ("[w]hen an Illinois court *** imposes multiple sentences of imprisonment on a defendant at the same time, *** then the sentences shall run concurrently," but "[t]he court shall impose consecutive sentences" where, *inter alia*, "[t]he defendant was convicted of *** predatory criminal sexual assault of a child ***"); *People v. King*, 2024 IL App (4th) 230648-U, ¶¶ 63-69 (under the mandatory consecutive sentencing provisions of section 5-8-4(d), "[s]entences for multiple nontriggering offenses may be served concurrently to one another after any consecutive sentences for triggering offenses have been discharged" (internal quotation marks omitted)). Thus, defendant faced a minimum aggregate term of 15 years in prison and a maximum aggregate term of at least 127 years. Given the serious nature of the offenses, there is no potentially meritorious basis for arguing that the trial court committed plain error by sentencing defendant to an aggregate prison term only 2 years above the statutory minimum and more than 100 years below the maximum. See *Campos*, 2024 IL App (2d) 230056,

¶ 48 ("The trial court abuses its discretion if it imposes a sentence that is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense.").

¶ 33   After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit.

¶ 34                                III. CONCLUSION

¶ 35   For the reasons stated, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Kane County.

¶ 36   Affirmed.