2025 IL App (1st) 231941-U

No. 1-23-1941

June 3, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 11727 |
| | ) | |
| ANTHONY PETITT, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

ORDER

¶ 1    *Held*:  We affirm defendant's convictions for aggravated unlawful restraint and unlawful use or possession of a weapon by a felon over his contention that the State failed to prove his guilt beyond a reasonable doubt.

¶ 2    Following a bench trial, defendant Anthony Petitt was found guilty of aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2022)) and unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2022)) and sentenced to 3½ years' imprisonment. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt

because the victim's testimony was incredible and the court erred in finding other evidence corroborative. We affirm.

¶ 3       Defendant was charged by indictment with one count each of aggravated unlawful restraint, UUWF, and aggravated assault arising from an incident where he allegedly detained Amanda Geraghty and placed her in reasonable apprehension of battery while using a firearm.

¶ 4       Geraghty testified that on September 24, 2022, she was engaged in a "friends with benefits" relationship with defendant, her ex-boyfriend. On that day, she worked as a bartender until 2:30 a.m. Geraghty drank "a few" shots with customers and consumed cocaine with defendant. Later, Geraghty went to her parents' house, where she lived with her two children. Geraghty lived in the basement; the other family members lived on the second floor. Defendant had a key to the back door of the basement, but it had been "a week or two" since he stayed with Geraghty.

¶ 5       When Geraghty arrived home at 3:30 or 4 a.m., defendant was in her bedroom. Geraghty wanted to sleep because she had to take her daughter to a volleyball game at 8:30 a.m. She argued with defendant, and then "it was quiet for a couple of hours." Before Geraghty left with her daughter, defendant "messaged" her that he would leave the house by the time she returned.

¶ 6       When Geraghty returned around 9:15 a.m., defendant was asleep in her bed. Geraghty took defendant's "pull case and a bag of socks" and placed them by the back door so that defendant would leave. When defendant woke, he "lost it," locked the door, said that he was "not going anywhere and neither [was Geraghty]," and headbutted her. Defendant held a silver firearm equipped with a green laser. Geraghty threw herself onto the bed, and defendant put the firearm to the back of her head and "was digging it in." He threatened to kill Geraghty's children first, "to

watch [her] suffer," and then the rest of her family. Defendant also had a knife, and said that he "didn't know if he wanted to slice [Geraghty's] throat or blow [her] brains out."

¶ 7    Defendant threw "stuff" around Geraghty's room, including glass marijuana pipes and garbage, and "dumped bottles of water" over her. Defendant hit Geraghty's face twice, which "didn't hurt much," and spat on her several times. He also sliced the bed with his knife. Geraghty begged defendant to let her leave, cried, and "begg[ed] for her life." Defendant responded by pointing the firearm at her and threatening to kill her children. Defendant fell asleep at a little after noon, so Geraghty snuck from the room and retrieved her parents and son from upstairs. They all left the residence and Geraghty and her brother both called the police.

¶ 8    Geraghty identified the firearm in footage from a police officer's body-worn camera and a photograph, which the State published, as the firearm defendant pointed at her.

¶ 9    On cross-examination, Geraghty stated that defendant was staying with a friend and most of his belongings were at his friend's house. When Geraghty arrived at her house, she and defendant argued while whispering for approximately 30 minutes and then lay silently "for a little over an hour." Geraghty stated that she was unsure of the "timeframe," but she and defendant did not sleep until she left to take her daughter to the volleyball game. After Geraghty returned and defendant woke, he locked the door, stood in front of it, and headbutted her. Geraghty had no visible injuries and could not recall if defendant hit her with an open hand or closed fist.

¶ 10    At approximately 9:30 a.m., defendant quietly threatened Geraghty with the firearm, and the events "went on" for almost three hours. The stairs leading to the living room from the basement were "open," but Geraghty asserted that "[t]here is no way to hear anything going on down there." Geraghty promised defendant that she would not call the police so that he would go

to sleep, but defendant "fought" and "tried sleeping in front of the door." Ultimately, defendant slept in the bed and told Geraghty that he "would shoot" if she called the police and would kill her family if she screamed.

¶ 11    Geraghty's mother and stepfather, Anne Fedro and Robert Fedro, testified that they did not own a firearm and had never seen Geraghty or her children with a firearm.[1] Robert additionally testified that on September 24, 2022, Anne and Geraghty came upstairs and said that they needed to leave the house with Geraghty's son. Geraghty was "distraught" and crying.

¶ 12    Chicago police officer Michael Laurie testified that on September 24, 2022, he responded to Geraghty's residence and saw an off-duty SWAT officer positioned across the street. Laurie took cover behind a large tree. After defendant exited the residence, Laurie entered the basement and went to the bedroom. The mattress was "destroyed or cut up." In the laundry room, approximately 15 feet from the bedroom, he discovered a loaded semiautomatic firearm with a green laser attachment under clothing in a laundry basket. Laurie identified his body-worn camera footage showing the discovery of the firearm, which was published.[2]

¶ 13    Chicago police detective Thien Chaiket testified that on September 24, 2022, he interviewed defendant, who stated that Geraghty threw water at him and he threw water back. Defendant also stated that he cut up the bed and "that it's his bed and he can cut it up." Asked what defendant used to cut up the bed, Chaiket responded, "I think a knife."

¶ 14    On cross-examination, Chaiket stated that he also interviewed Geraghty and noticed "inconsistencies" after reviewing text messages on her phone. The timeline that Geraghty provided

---

[1] As Anne Fedro and Robert Fedro have the same last name, we refer to them by their first names.
[2] This footage was shown during Geraghty's testimony.

was not "in line with" the text messages. Initially, Geraghty did not tell Chaiket that she took her daughter to the volleyball game. Geraghty returned the following day for a second interview, provided a "different" timeline, and explained that she had not slept in days. Chaiket did not observe injuries to Geraghty's face.

¶ 15    The State introduced a stipulation that defendant had a felony conviction in Wisconsin for possession of a controlled substance in 2003.

¶ 16    The court found defendant guilty of aggravated unlawful restraint and UUWF and not guilty of aggravated assault. In ruling, the court commented that it was not concerned with the inconsistencies in the timeline, but with whether Geraghty was restrained and defendant possessed a firearm. The "[l]ynch [*sic*] pin" was the recovery of the firearm, which transformed the case from a "he said, she said type of situation." The court understood that both Geraghty and defendant consumed cocaine, and Geraghty also consumed alcohol, but, in view of Geraghty's escape from the basement, found "no question *** something happened that day."

¶ 17    Regarding how Geraghty escaped, the court noted that a person who uses cocaine will eventually "crash." With regard to the whispered argument, the court noted that "often times *** where someone is threatened with a weapon and threatened to be killed, that *** person may not scream or act the way we would anticipate." The court commented that the State presented corroborative evidence including the response by the Chicago Police Department, Robert's testimony of Geraghty's behavior after the incident, and that the bed was cut up. The court concluded that the bed was cut up because defendant was "in a rage," and noted that Geraghty's lack of injuries did not affect her credibility.

¶ 18    Defendant filed a motion for a new trial, arguing, *inter alia*, that the court erred in finding Geraghty credible and in finding sufficient corroborative evidence that defendant possessed a firearm or threatened Geraghty.

¶ 19    After a hearing, the court denied defendant's motion, stating that it found Geraghty credible and considered the testimony of Geraghty's family and the police response. The court commented that Geraghty used drugs and drank alcohol that evening, "but that does not make her a free game to be victimized by someone." The court sentenced defendant to a total of 3½ years' imprisonment. Defendant did not file a motion to reconsider sentence.

¶ 20    On appeal, defendant argues that the State failed to prove his guilt beyond a reasonable doubt because Geraghty's testimony was "unrealistic and uncorroborated."

¶ 21    The standard of review for a challenge to the sufficiency of the evidence is "whether, viewing the evidence in the light most favorable to the State, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). This standard applies whether the evidence is direct or circumstantial. *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. *People v. Brown*, 2013 IL 114196, ¶ 48. The reviewing court must allow all reasonable inferences from the record in favor of the prosecution (*People v. Cunningham*, 212 Ill. 2d 274, 280 (2004)) and will not reverse a conviction unless the evidence is "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt" (*People v. Jackson*, 232 Ill. 2d 246, 281 (2009)).

¶ 22    To sustain a conviction for aggravated unlawful restraint as charged, the State needed to prove that defendant knowingly without legal authority detained Geraghty while using a firearm. 720 ILCS 5/10-3.1(a) (West 2022); 720 ILCS 5/10-3(a) (West 2022). To sustain a conviction for UUWF as charged, the State needed to prove that defendant knowingly possessed a firearm after having been convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2022).

¶ 23    The evidence in this case, viewed in the light most favorable to the State, was sufficient to prove beyond a reasonable doubt that defendant unlawfully possessed a firearm and used it to detain Geraghty in her bedroom. The evidence established that defendant threatened Geraghty with a firearm with a green laser light, beat her, threw water on her, and spat on her, and did not let her leave the bedroom for hours although she begged him to let her go. Only after defendant fell asleep was Geraghty able to leave the room and then leave the house with her family. Officers searched the basement and discovered the firearm with the green laser attachment inside a laundry basket near the bedroom. The evidence also established that defendant had been convicted of a felony in Wisconsin.

¶ 24    Defendant, however, argues that Geraghty's account was unbelievable due to inconsistencies in her timeline of events, her intoxication, and her lack of injuries. Defendant also contends that it is incredible that nobody else in the house heard the events in the basement.

¶ 25    Defendant's contentions are merely a request for this court to reweigh the evidence, which is not a function of this court. See *Brown*, 2013 IL 114196, ¶ 48. The trial court heard Geraghty's testimony and acknowledged the inconsistencies in her timeline of events, her lack of visible injuries, and that her argument with defendant were whispered but found they did not impact her credibility. "Minor inconsistencies in the testimony between witnesses or within one witness's

testimony may affect the weight of the evidence but do not automatically create a reasonable doubt of guilt." *People v. Corral*, 2019 IL App (1st) 171501, ¶ 85; see also *People v. Peoples*, 2015 IL App (1st) 121717, ¶ 67 ("The trier of fact is free to accept or reject as much or as little of a witness's testimony as it pleases."). Notwithstanding defendant's argument to the contrary, nothing in the report of proceedings establishes that the court had any doubt that defendant possessed the firearm and detained Geraghty against her will.

¶ 26     Additionally, despite defendant's contentions about Geraghty's drug and alcohol use the evening before the incident, no evidence was adduced that Geraghty was impaired during the incident or was a habitual drug and alcohol user. See *People v. Herman*, 407 Ill. App. 3d 688, 705 (2011) (evidence that a witness was a habitual user of narcotics was relevant in assessing the witness' "propensity for deceit and her capacity to observe, retain and relate information accurately"). Again, the trial court considered this evidence in determining that Geraghty was credible and was "not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt." See *People v. Siguenza-Brito*, 235 Ill. 2d 213, 229 (2009).

¶ 27     Defendant also argues that the court erred in finding the police response, Robert's testimony regarding Geraghty's demeanor, the condition of the bed, and the recovery of the firearm to be corroborative of Geraghty's allegations. Viewing the evidence in the light most favorable to the State, however, these facts establish that Geraghty was distraught when she came upstairs to tell her family to leave the house, the police arrived after they were called, and the mattress was destroyed consistent with being cut up with a knife, corroborating Geraghty's testimony. Further, the police discovered the firearm, matching Geraghty's description of it, hidden in a nearby

laundry basket. As the court noted, the discovery of the firearm was the "[l]ynch [*sic*] pin" of the case. These facts corroborate Geraghty's testimony that defendant detained her with a firearm, and thus weigh in favor of her credibility. See *Brown*, 2013 IL 114196, ¶ 48.

¶ 28 Taking all the evidence in the light most favorable to the State, a court could have reasonably concluded that defendant possessed a firearm and detained Geraghty with it. As the evidence is not so "unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt of the defendant's guilt," we affirm his convictions. See *Jackson*, 232 Ill. 2d at 281.

¶ 29 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 30 Affirmed.